531 F.2d 1307
 12 Fair Empl.Prac.Cas. 1654,
12 Empl. Prac. Dec. P 10,960
Charles V. HAYS et al., Plaintiffs-Appellees,
v.
REPUBLIC STEEL CORPORATION, Defendant-Appellant-Cross Appellee,
v.
Clyde E. MASSEY, Intervenor-Appellee-Cross Appellant.
 No. 74--2908.
 United States Court of Appeals,
Fifth Circuit.
 May 24, 1976.
Rehearing Denied Aug. 12, 1976.
 
 1
 J. Fredric Ingram, Birmingham, Ala., for Republic Steel Corp.
 
 
 2
 Clarence F. Rhea, Gadsden, Ala., for Hays and Massey.
 
 
 3
 Appeals from the United States District Court for the Northern District of Alabama.
 
 
 4
 Before BROWN, Chief Judge, and THORNBERRY, Circuit Judges, and MILLER,* Associate Judge.
 
 MILLER, Associate judge:
 
 5
 Republic Steel Corporation appeals from that part of the judgment of the district court which assessed liquidated damages against it under section 7[1] of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 626, in favor of appellees Ross C. Hopper, Randall J. Moncus, and Benjamin Grady Goss. Clyde E. Massey appeals from that part of the district court's judgment denying him relief on the basis that his claim was barred by failure to file a timely notice of intent to sue with the U.S. Department of Labor as required by subsection 7(d)[2] of the ADEA.
 
 
 6
 The trial judge noted that the ADEA provides for payment of liquidated damages only where there is a willful violation of the Act. He observed that if section 11[3] of the Portal-to-Portal Act of 1947 (PPA), 29 U.S.C. § 260, applied, he would have discretion not to award liquidated damages if the actions of the defendant were in good faith 'and there are other provisions that are there described.' He determined that 'there was no bad faith on the part of the defendant' and said 'this Court would, if it had any discretion in this matter, not award liquidated damages.' However, he held section 11 of the PPA not to be applicable. With respect to whether Republic Steel's violations were 'willful,' the trial judge said:
 
 
 7
 The Fifth Circuit in 1972, in the case of Coleman v. Jiffy June Farms (5 Cir.) (458 F.2d 1139 (1971), cert. denied, 409 U.S. 948 (, 93 S.Ct. 292, 34 L.Ed.2d 292) (1972)), however, involving the meaning of the words 'willful violation' with respect to a statute of limitation issue involving the Fair Labor Standards Act has taken the position, in effect, that there need not be bad intent for there to be willful violations. That in essence if an act is intentionally done and knowingly done, conscious that there may be implications under a wage act, then it would be a willful violation of that act if their act was wrong even though they thought the action they were taking was correct and proper, and even though they were acting upon advice of counsel as to what the construction of the Act would be. Based upon the Fifth Circuit's decision in that case which I think has to be analogous here . . . I have no option in the case and must find this to be a willful violation and award liquidated damages.
 
 
 8
 Thus, we are presented with a situation where the trial judge determined that Republic Steel satisfied the requirements of section 11 of the PPA,[4] which covers violations under the Fair Labor Standards Act (FLSA), so that he would, if he could, exercise his discretion not to award liquidated damages; but where he has held that section 11 of the PPA does not apply to violations under the ADEA, thus precluding his exercise of discretion. The central issue is whether section 11 of the PPA applies.[5]
 
 
 9
 We are satisfied that the PPA, and more particularly section 11 thereof, constituted an 'amendment' to the FLSA. The preamble of the Act states that its purpose was--
 
 
 10
 To relieve employers from certain liabilities and punishments under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, and the Bacon-Davis Act, and for other purposes.
 
 
 11
 Cf. Uptagrafft v. United States, 315 F.2d 200 (CA 4), cert. denied, 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 52 (1963).
 
 
 12
 In discussing the 'Nature of the Problem' giving rise to the legislation, the House committee report (H.R.Rep.No.71, 80th Cong., 1st Sess. 3 (1947) U.S.Code Cong.Serv.1947, p. 1031) treated the subject of liquidated damages in the following words:
 
 
 13
 It must be remembered also that the action for liquidated damages under the wage-hour law cannot be waived or compromised by agreement between the employer and employee (Brooklyn Savings Bank v. O'Neil (324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945))).
 
 
 14
 Nor can the Court avoid the assessment of the full amount of liquidated damages, regardless of the good faith of the employer (Citing Missel v. Overnight Motor Transportation Co., 126 F.2d 98 (CA 4), aff'd, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942), and qhoting a statement from the Fourth Circuit's opinion, 126 F.2d at 111: 'Yet no matter how much we lament its harshness, the Section (providing for liquidated damages) appears to be mandatory. . . .')
 
 
 15
 It was this harshness which prompted the House to include in the bill (H.R. 2157) language similar to what eventually became section 11. The Senate deleted the language, but the Conference Committee added section 11 to the bill. H.R.Rep.No.326, 80th Cong., 1st Sess. 17 (1947). The President recognized the amendatory impact of section 11 on subsection 16(b) of the FLSA in a message transmitting his approval of the PPA (H.Doc.No.247, 80th Cong., 1st Sess. 2 (1947)):
 
 
 16
 Section 11 of the act gives the court discretionary authority to waive liquidated damages. Under the language of the section, however, it continues to be the duty of the court to award liquidated damages unless convinced that the employer has, in good faith, sought to comply with his obligations under the act. I do not believe this section will be used to permit employers to engage in violation of the law with impunity.
 
 
 17
 Even though section 11 did not specifically refer to subsection 16(b) of the FLSA, it clearly constituted an amendment thereto. See United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 (1931); 1A Sutherland Statutory Construction § 22.01 (4th ed. 1972).[6]
 
 
 18
 Subsection 7(b) of the ADEA plainly states that the provisions of the ADEA shall be enforced in accordance with the remedies provided in section 16 of the FLSA, as amended. The words 'as amended' are unambiguous and should be interpreted according to their plain meaning. Ex parte Collett, 337 U.S. 55, 58, 69 S.Ct. 944, 946, 93 L.Ed. 1207, 1210 (1949); Hilton v. Sullivan, 334 U.S. 323, 329, 68 S.Ct. 1020, 1023, 92 L.Ed. 1416, 1421 (1948); State of Israel v. Motor Vessel Nili, 435 F.2d 242 (CA 5 1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971); Interstate Natural Gas Co. v. Federal Power Commission, 156 F.2d 949 (CA 5 1946), aff'd, 331 U.S. 682, 67 S.Ct. 1482, 91 L.Ed. 1742 (1947); Creekmore v. Public Belt R.R. Commission, 134 F.2d 576 (CA 5), cert. denied, 320 U.S. 742, 64 S.Ct. 43, 88 L.Ed. 440 (1943). There is nothing in the ADEA or its legislative history suggesting that subsection 7(b) be interpreted to read out the amendment of the FLSA by the PPA. On the contrary Senator Javits, who, along with Senator Yarborough, the floor manager of the bill which became the ADEA (S. 830), cosponsored the particular amendment which provided for enforcement techniques (including remedies) under the FLSA, stated in a colloquy with Senator Yarborough (113 Cong.Rec. 31254 (1967)):
 
 
 19
 The enforcement techniques provided by S. 830 are directly analogous to those available under the Fair Labor Standards Act; in fact, S. 830 incorporates by reference, to the greatest extent possible, the provisions of the Fair Labor Standards Act. (Emphasis supplied.)
 
 And he added:
 
 20
 We now have the enforcement plan which I think is best adapted to carry out this age-discrimination-in-employment ban with the least overanxiety or difficulty on the part of American business, and with complete fairness to the workers. I think that is one of the most important aspects of the bill.
 
 
 21
 The Senator's reference to 'the least over-anxiety or difficulty on the part of American business' could hardly have been made if there were an absolute imposition of liquidated damages, the harshness of which prompted Congress to enact section 11 of the PPA.
 
 
 22
 With respect to the provision in subsection 7(b) of the ADEA that liquidated damages shall be payable only in cases of willful violations, we do not construe this to mean that they shall always be payable if there is a willful violation, regardless of the good faith of the employer. Such a construction would be inconsistent with the reference to the FLSA, as amended, discussed above. See United States v. Raynor, 302 U.S. 540, 547, 58 S.Ct. 353, 356, 82 L.Ed. 413, 417 (1938); Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Sheppard, 123 F.2d 773 (CA 5 1941), cert. denied,316 U.S. 704, 62 S.Ct. 1309, 86 L.Ed. 1772 (1942).
 
 
 23
 In view of the foregoing, we hold that section 11 of the PPA applies to violations under the ADEA.
 
 
 24
 With respect to cross-appellant Massey, the trial judge found that he 'was a victim of unlawful age discrimination,' but denied his claim 'based upon the failure to file the necessary intent to sue letter.' The record shows that Massey orally complained to a representative of the U.S. Department of Labor, saying he 'wanted to do something about it.' He was told that he 'would have to get it (a written notice) in in just a few days, that the time was running out.' He had a written notice of intent to sue prepared, addressed to the U.S. Department of Labor's Birmingham office, but became ill and was hospitalized, and the notice was not filed. This court cannot waive a limitation period established by Congress, and we are not persuaded that the oral complaint of Massey constituted the 'filing ' of a notice of intent to bring a civil action.' See Powell v. Southwestern Bell Telephone Co., 5 Cir.,494 F.2d 485, 489 (1974), where this court said:
 
 
 25
 We reject appellant's argument that her June 16, 1970 letter asking the Secretary to sue in her behalf constituted notice. Notice of a desire that an agency of the federal government commence litigation on one's behalf simply does not equate with notice of such an individual's personal intent to commence a private lawsuit.
 
 
 26
 The most that can be said is that Massey gave the Department oral notice that he 'wanted to do something about it,' which is not the same as filing a notice of intent to bring a civil court action against Republic Steel. Powell v. Southern Bell Telephone Co., supra; see United States v. Lombardo, 241 U.S. 73, 76, 36 S.Ct. 508, 509, 60 L.Ed. 897, 898 (1916); Brennan v. Ace Hardware Corp., 495 F.2d 368 (CA 8 1974). We hold that Massey's claim is barred by the statute of limitations.
 
 
 27
 The judgment of the district court is reversed with respect to appellees Hopper, Moncus, and Goss, and affirmed with respect to cross-appellant Massey.
 
 
 
 *
 Of the U.S. Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 Subsection 7(b) provides as follows:
 (b) The provisions of this (Act) shall be enforced in accordance with the powers, remedies, and procedures provided in sections 11(b), 16 (except for subsection (a) thereof), and 17 of (the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 211(b), 216, 217)), and subsection (c) of this section. Any act prohibited under section 4 of this Act shall be deemed to be a prohibited act under section 15 of (the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 215)). Amounts owing to a person as a result of a violation of this (Act) shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 16 and 17 of (the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216, 217)): Provided, That liquidated damages shall be payable only in cases of willful violations of this (Act). In any action brought to enforce this (Act) the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this (Act), including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section . . ..
 Subsection (b) of the referenced section 16 (29 U.S.C. § 216) provides as follows:
 (b) Any employer who violates the provisions of section 6 or section 7 of this (Act) shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages . . .
 
 
 [2]
 Subsection 7(d) provides as follows:
 (d) No civil action may be commenced by any individual under this section until the individual has given the Secretary (of Labor) not less than sixty days' notice of an intent to file such action. Such notice shall be filed--
 (1) within one hundred and eighty days after the alleged unlawful practice occurred. . . .
 
 
 [3]
 Section 11 provides as follows:
 if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages . . ..
 For the court's discretion to be invoked, the employer must show that his failure was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose liquidated damages upon him. McClanahan v. Mathews, 440 F.2d 320 (CA6 1971).
 
 
 [4]
 There is nothing in the record to show that this determination is clearly erroneous, and the parties do not so contend
 
 
 [5]
 Republic Steel argues that application of the definition of 'willfulness' in Coleman was intended to be limited to the determination of whether, under 29 U.S.C. § 255, the two or (in case of a willful violation) three-year statute of limitations applies to violations of the FLSA. Although the question in that case was whether the three-year period applied, on rehearing, the court said, 458 F.2d at 1142: Out of caution, however, we note that our interpretation of the word 'wilful' as used in Section 255 was not intended to apply to Section 216(a) (the criminal provision of the FLSA). Our decision is limited to the particular facts of this case and to the question before us: civil liability under the Fair Labor Standards Act. (Emphasis supplied.)
 Thus Coleman addressed the question whether a violation committed in good faith may yet be willful and decided that it could be in a case involving civil liability, which, of course, could include liquidated damages.
 
 
 [6]
 Section 22.01 states:
 Thus, any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form, is treated as amendatory.