658 F.2d 1088
 27 Fair Empl.Prac.Cas. 1616,
27 Fair Empl.Prac.Cas. 279,
27 Empl. Prac. Dec. P 32,181
Herbert Kyle HEDRICK, Plaintiff-Appellee, Cross-Appellant,
v.
HERCULES, INC., Defendant-Appellant, Cross-Appellee.
 No. 80-7566.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B*
 Oct. 15, 1981.
As Amended Dec. 21, 1981.
 Thomas, Taliaferro, Forman, Burr & Murray, J. Fredric Ingram, William F. Murray, Jr., Birmingham, Ala., for defendant-appellant, cross-appellee.
 
 
 1
 Rhea, Boyd & Rhea, Clarence F. Rhea, Gadsden, Ala., for plaintiff-appellee, cross-appellant.
 
 
 2
 Appeals from the United States District Court for the Northern District of Alabama.
 
 
 3
 Before FRANK M. JOHNSON, Jr., and HATCHETT, Circuit Judges, and SCOTT**, District Judge.
 
 CHARLES R. SCOTT, District Judge:
 
 4
 Herbert Kyle Hedrick, a former employee of Hercules, Inc., filed suit against Hercules in the United States District Court for the Northern District of Alabama alleging that his employment with Hercules had been terminated in violation of the Age Discrimination in Employment Act (hereinafter "ADEA"). The jury returned special verdicts finding that age was a determinative factor in the decision not to employ Hedrick at his previous salary, which was pay grade 12, or a lower grade pay level but that age was not a determinative factor in the decision not to employ Hedrick as Regional Plant Manager at pay grade 15. The jury awarded Hedrick damages in the amount of $103,887. Hercules subsequently offered to reinstate Hedrick in a position at pay grade 12, Hedrick's previous pay grade level. The court approved the offer of reinstatement, concluding that damages were to be awarded from April 1978, when Hedrick was discharged, until May 1980, when the offer of reinstatement was approved by the district court. Upon defendant's motion for partial relief from the jury verdict, the district court reduced the award of damages to $52,887, recognizing that the jury had not used the appropriate period of time in computing the damage award. The lower court also awarded Hedrick $26,443.50 in liquidated damages and awarded Hedrick's attorney $25,200 in attorney's fees. Defendant's motions for a directed verdict, judgment notwithstanding the verdict, and a motion for a new trial were denied by the district court.
 
 
 5
 Hercules contends on appeal that the district court erred in denying defendant's motions for a directed verdict and a judgment notwithstanding the verdict, that a new trial should have been granted because the excessive jury award indicated that the jury was motivated by passion and prejudice, and that the district court abused its discretion in awarding liquidated damages and awarding plaintiff's attorney excessive attorney's fees. Hedrick contends on cross-appeal that a liquidated damage award equal to the full amount of damages awarded by the jury is warranted and that Hercules did not make a sufficient offer of reinstatement to toll the continuation of damages. Hedrick further contends that an increase in the award of attorney's fees by the district court is warranted and seeks attorney's fees in connection with this appeal.
 
 
 6
 In 1977 Hercules formulated a plan for the reorganization of its domestic operations. The plan called for a transition from a departmental to a matrix system of organization, resulting in a consolidation of certain positions and a corresponding reduction in personnel. A Reorganizational Planning Committee was formed to implement the plan. The committee established guidelines for determining whether to dismiss employees, pursuant to the reorganization plan, who were within the ADEA protected age category of 40 to 65 years of age. These guidelines provided as follows:
 
 
 7
 The primary question that a department must ask is: "can we justify the reduction in force exclusive of any consideration of age or pension eligibility?" If the answer is negative for any reduction situation, then there is a good possibility of being liable for charges of age discrimination.
 
 
 8
 Justifying a reduction in force requires evidence that there is no longer a need for an employee's service within his job function and that it is either unfeasible or unreasonable to assign the employee to other work, or there is a marginal performance record which negates against any such consideration.
 
 
 9
 Although the above specially applies to a reduction in force, any personnel action directed toward a member of this protected group must answer the question, "can we justify the personnel action exclusive of any consideration of age or pension eligibility?"
 
 
 10
 The Board of Directors approved the reorganization plan and guidelines, and in January 1978 the committee began implementation of the plan. During this time the company conducted an Average Age & Service survey. The results of the survey revealed that in comparison with six other major chemical companies Hercules had the highest average employee age.
 
 
 11
 Prior to his dismissal, Hedrick held the position of Plant Manager at the Bessemer, Alabama plant which produced explosives. Under the reorganization plan a Regional Plant Manager was to be appointed to oversee the Bessemer plant and three other explosive production plants. The current Plant Manager positions in those plants were to be abolished. In addition to supervising the four plants, the Regional Plant Manager was to be responsible for the general financial planning of the plants. The position of Regional Plant Manager was to be a grade 15 pay level which would be a 30% higher base salary than the grade 12 pay level of a Plant Manager.
 
 
 12
 The Reorganizational Planning Committee determined that Hedrick did not possess the necessary qualifications for the new position of Regional Plant Manager. Consequently, Hedrick's employment with Hercules was terminated in April 1978 since his position as Plant Manager had been eliminated. Hedrick was 61 years of age when he was discharged and had worked for Hercules for approximately 37 years.[1] The committee appointed Robert Shepardson to the Regional Plant Manager position. Shepardson had worked at several of the Hercules plants and had been involved in production, administration, and finance. Shepardson was several years younger than Hedrick but was within the ADEA protected age group.
 
 
 13
 Several incidents involving Hedrick were considered by the committee in determining whether Hedrick would be suitable for the position of Regional Plant Manager. In April 1977, following the conclusion of a strike at the Bessemer plant while Hedrick was Plant Manager, a post-strike meeting was arranged to encourage support for the company. The sales personnel, however, were not invited to attend the meeting. It is unclear why the sales personnel were excluded and who was responsible for excluding them from the meeting. The Hercules main office took appropriate action to ensure that the sales personnel were able to attend the meeting. In July 1977 Donald Parker, a nitroglycerine technician, was sent by Hercules to the Bessemer plant to repair the nitroglycerine production line. Hedrick refused to give Parker the key to the plant which Parker had requested so that he could work overtime. After Parker obtained a key elsewhere, Hedrick had some of the locks to the plant changed. Also in July 1977, Hedrick refused to permit a sales manager to reenter the plant because he had failed to submit to a security check on his way out.
 
 
 14
 Several employees who worked with Hedrick testified that Hedrick worked well with people and strictly enforced safety and security rules. Prior to 1977, Hedrick had generally received good evaluations of his work. Richard G. Sailer was appointed Director of Operations in 1977 and during that time was responsible for supervising all explosive plants including the plant managed by Hedrick at Bessemer. Sailer submitted evaluation reports on August 3, 1977 and January 1, 1978 in which he rated Hedrick's performance as "marginal" and stated that he was "ineffective as a leader and manager". Sailer subsequently indicated to Durward H. Little, who was chairman of the Reorganizational Planning Committee, that Hedrick was not qualified for the position of Regional Plant Manager.
 
 
 15
 Upon instructions from Little, Sailer informed Hedrick in February 1978 that the position of Plant Manager at Bessemer was being eliminated and that he would not be appointed to the new position of Regional Plant Manager. Hedrick testified that Sailer told him that Hercules was "going to get rid of the good 'ole Joes and get some younger folks in" and that Hedrick "had no friends in Wilmington" at the company's main office. Sailer subsequently asked Hedrick if he would be interested in another position at a lower salary grade level. Hedrick responded that he would not accept a position at a reduced salary.
 
 
 16
 As part of the company's reorganization plan, a Personnel Review Committee was established to assist employees who had been displaced as a result of the reorganization in finding other positions within the company. The Personnel Review Committee was unable to find a position for Hedrick within the company at his previous salary level. Thereafter, Hercules provided Hedrick with the services of a job placement firm, however, Hedrick was unable to find other employment.
 
 
 17
 Directed Verdict or Judgment Notwithstanding the Verdict
 
 
 18
 Hercules contends that the district court erred in denying defendant's motions for a directed verdict and a judgment notwithstanding the verdict. In Boeing Company v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), this Court established the standard to be applied in reviewing a directed verdict or judgment notwithstanding the verdict as follows:
 
 
 19
 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all the evidence not just the evidence which supports the non-mover's case but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motion for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of the witnesses.
 
 
 20
 With this general standard in mind, we must review the elements of a prima facie case under the ADEA.[2] The Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) announced that in racial discrimination in employment cases brought under Title VII of the Civil Rights Act of 1964, the plaintiff has the initial burden of showing:
 
 
 21
 (i) that he belongs to a racial minority;
 
 
 22
 (ii) that he applied and was qualified for a job for which the employer was seeking applicants;
 
 
 23
 Id. at 802, 93 S.Ct. at 1824. The McDonnell Court, however, stated that "[the] facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required ... is not necessarily applicable in every respect to differing factual situations." Id. at 802 n. 13, 93 S.Ct. at 1824 n. 13. This Court has applied the McDonnell test with some modifications in ADEA cases, recognizing that the McDonnell Court did not intend to establish an exclusive prima facie evidence test for discrimination in employment cases. Harpring v. Continental Oil Co., 628 F.2d 406 (5th Cir. 1980); Price v. Maryland Casualty Co., 561 F.2d 609 (5th Cir. 1977); Marshall v. Goodyear Tire & Rubber Co., 554 F.2d 730 (5th Cir. 1977). In Marshall we set forth the elements of a prima facie ADEA case as follows:
 
 
 24
 (1) the employee's membership in the protected group;
 
 
 25
 (2) his discharge;
 
 
 26
 (3) his replacement with a person outside the protected group; and
 
 
 27
 (4) his ability to do the job.
 
 
 28
 554 F.2d at 735.
 
 
 29
 In subsequent decisions this Court recognized the need to revise the ADEA prima facie elements announced in Marshall in cases involving an overall personnel reduction, as in the case at bar, rather than the replacement of a single employee. McCorstin v. United States Steel Corp., 621 F.2d 749 (5th Cir. 1980); Williams v. General Motors Corp., 656 F.2d 120 (5th Cir. 1975). In Williams we held that the plaintiff in a reduction-in-force ADEA case could establish a prima facie case by:
 
 
 30
 (1) satisfying the "standing requirements under the statute," ... i.e., showing that he is within the protected age group and that he has been adversely affected--discharged or demoted--by defendant's employment decision;
 
 
 31
 (2) showing that he was qualified to assume another position at the time of discharge or demotion; and
 
 
 32
 (3) producing evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.
 
 
 33
 At 129 (footnote omitted). To satisfy the third requirement in Williams "the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining or relocating a plaintiff because of his age, or (2) defendant regarded age as a negative factor in such consideration." At 130.
 
 
 34
 Hercules argues that Hedrick failed to produce sufficient evidence under the Boeing standard on each element necessary to establish a prima facie case of age discrimination. Hercules, therefore, contends that the district court should have granted a directed verdict or a judgment notwithstanding the verdict. In applying the reduction-in-force prima facie ADEA test delineate in Williams, it is clear that Hedrick has satisfied the first requirement since he is within the protected age group and was discharged by Hercules. Hedrick has presented substantial evidence to satisfy the second element. Hedrick has worked for Hercules for 37 years holding various managerial positions in several of the company's explosive production plants. For several years he held the position of Plant Manager of the Bessemer explosive plant. Furthermore, an evaluation conducted by an employment counseling firm revealed that "Hedrick has excellent aptitudes for effectiveness in management and can make a very positive contribution to the formulation, as well as the implementation, of Company policy." Consequently, it is clear that Hedrick has produced sufficient evidence of his qualifications for another position to avoid a directed verdict or a judgment notwithstanding the verdict. Finally, we must determine whether Hedrick has produced sufficient evidence tending to show that in reaching the decision to discharge Hedrick, defendant intended to discriminate. The statement made by Sailer that the company was going to get rid of the "good 'ole Joes" is probative on the issue of age discrimination. Sailer, who held the position of Director of Operations with Hercules, supervised the plant managed by Hedrick and had a substantial amount of input in the Reorganizational Planning Committee's determination to discharge Hedrick. Hedrick has also submitted evidence that shortly before Hercules formulated its reorganization plan the company conducted a survey which revealed that in comparison with six other major chemical companies, Hercules had the highest average employee age. Although the evidence presented by Hedrick to prove that age was a determinative factor may not have been conclusive on the issue, we conclude that under the Boeing standard Hedrick produced sufficient evidence to present a jury question and that the district court properly denied defendant's motions for a directed verdict and a judgment notwithstanding the verdict.
 
 Excessive Jury Award
 
 35
 Hercules argues that the excessive jury award indicates that the jury was motivated by passion and prejudice and that, therefore, the district court abused its discretion in denying defendant's motion for a new trial. Absent a clear abuse of discretion, the district court's denial of a motion for a new trial must be upheld. Adams v. Ford Motor Credit Co., 556 F.2d 737 (5th Cir. 1977); Pletz v. Christian Herald Ass'n, 486 F.2d 94 (5th Cir. 1973). The scope of review is particularly limited where the motion for a new trial is based on the ground that the jury's award of damages was excessive. Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033 (5th Cir. 1977). In reviewing a denial of a motion for a new trial based on an excessive jury award, proper deference must be accorded to the determinations of both the jury and the trial judge. Taylor v. Washington Terminal Co., 409 F.2d 145 (D.C.Cir.1969).
 
 
 36
 In the instant case the trial judge instructed the jury to award damages equal to the salary and benefits that Hedrick would have received from the date of his discharge in April 1978 until the date of the verdict in March 1980. The jury awarded damages in the amount of $103,887. This award of damages was apparently based upon the period of time from Hedrick's discharge to his 65th birthday. Following the entry of the verdict, Hercules offered to reinstate Hedrick as Manager of Special Projects at the Clearfield, Utah plant at pay grade 12 which was Hedrick's previous salary level. Hercules then filed a motion for partial relief from the jury's verdict. The district court concluded that Hercules' offer of reinstatement was reasonable and made in good faith. The district court determined that damages should have been awarded for the period of time from Hedrick's discharge in April 1978 until the court's approval of the offer of reinstatement in May 1980. Therefore, the district court reduced the award of damages to $52,887 to reflect the appropriate period of time that the damages were to cover. Consequently, it appears that the excessive jury award was due to a misunderstanding as to the length of time that the award was to cover, rather than a result of passion or prejudice. The district court, therefore, did not abuse its discretion in denying defendant's motion for a new trial.
 
 Offer of Reinstatement
 
 37
 Hedrick contends that the offer of reinstatement was not sufficient to toll the continuation of damages for lost wages and benefits. The ADEA provides that:
 
 
 38
 ...the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this (Act), including without limitation judgments compelling employment, reinstatement or promotion...
 
 
 39
 29 U.S.C. § 626(b). Thus, the determination of whether reinstatement is an appropriate remedy lies within the sound discretion of the trial court. Burton v. Cascade School Dist. Union High School No. 5, 512 F.2d 850 (9th Cir.), cert. denied, 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975); Combes v. Griffin Television, Inc., 421 F.Supp. 841 (W.D.Okl.1976). We conclude that the district court did not abuse its discretion in approving Hercules' offer of reinstatement as an appropriate remedy and in tolling the continuation of damages as of the date of the trial court's approval of the offer of reinstatement.
 
 Liquidated Damages
 
 40
 Hercules argues that because the evidence indicated that defendant acted in good faith, the district court abused its discretion in awarding liquidated damages. Hedrick contends that the finding of a wilful violation of the ADEA necessarily precludes a subsequent finding of good faith and that, therefore, the trial judge should have awarded the maximum amount of liquidated damages allowable. The ADEA provides for the payment of liquidated damages only where there is a wilful violation of the Act. 29 U.S.C. § 626(b). However, this Court in Hays v. Republic Steel Corp., 531 F.2d 1307 (5th Cir. 1976), held that liquidated damages were not automatically payable upon a finding of a wilful violation of the ADEA but rather that a trial judge could consider evidence of the employer's good faith in determining whether to award liquidated damages. The Hays court reached this conclusion after considering the applicability of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (hereinafter "FLSA") and Section 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 260, (hereinafter "PPA") to the ADEA. The ADEA provides for enforcement in accordance with the remedies provided in Section 16 of the FLSA, as amended.[3] Section 11 of the PPA provides as follows:
 
 
 41
 ... if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award an amount thereof not to exceed the amount (of damages awarded to the employee for lost wages and benefits).
 
 
 42
 29 U.S.C. § 260. Therefore, as this Court held in Hays, the discretion of a trial judge under Section 11 of the PPA to deny or reduce liquidated damages upon a showing of good faith applies in ADEA cases. 531 F.2d at 1312.
 
 
 43
 This Court has consistently held that a violation of the FLSA is wilful if the employer is aware that his actions are subject to the FLSA, even though the employer reasonably believed in good faith that his conduct was not in violation of the Act. Hays v. Republic Steel Corp., supra; Brennan v. Heard, 491 F.2d 1 (5th Cir. 1974); Coleman v. Jiffy June Farms Inc., 458 F.2d 1139 (5th Cir.), cert. denied, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). Consequently, in establishing a wilful violation it need not be shown that the employer knew that his actions were violative of the Act or that he acted maliciously or in bad faith, but only that the employer was aware that his actions were governed by the Act. Since the ADEA incorporates by reference the remedial provisions of the FLSA, the wilful standard developed under the FLSA is applicable to ADEA cases. If a wilful violation is found under this standard, then under Hays the trial judge would have the discretion to deny or reduce liquidated damages if the evidence showed that the employer had acted in good faith and had reasonable grounds for believing that his actions were not violative of the ADEA.
 
 
 44
 In the instant case the jury found that age was a determinative factor in the decision not to employ Hedrick at his previous salary grade level. In determining whether to reduce or deny liquidated damages, the district court noted that although Hercules may have acted in good faith in promulgating guidelines in an effort to comply with the ADEA, it failed to adequately ensure that these instructions would be followed in implementing the reorganization plan. The district court, therefore, awarded $26,443.50 in liquidated damages, an amount equal to 50 percent of the maximum allowable liquidated damage award. An award of liquidated damages certainly was warranted since Hercules was aware that its reorganization plan was governed by the ADEA and the jury found that age was a determinative factor in the decision to discharge Hedrick. However, the trial judge properly exercised his discretion in reducing the liquidated damage award in light of Hercules' good faith effort to comply with the ADEA through the establishment of guidelines.
 
 Attorney's Fees
 
 45
 Hercules contends that the district court's award of attorney's fees to plaintiff's counsel was excessive. Hedrick's attorney argues that an increase in the district court's award of attorney's fees is warranted and also seeks attorney's fees for this appeal. An award of attorney's fees under the ADEA is governed by 29 U.S.C. § 216(b) which provides that a "reasonable attorney's fee" may be awarded to plaintiff's counsel. The trial court's award of attorney's fees must be upheld unless a clear abuse of discretion is found. Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 581 (5th Cir. 1980); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974). In Johnson, this Court set forth the following 12 factors to be considered by a trial court in awarding attorney's fees:
 
 
 46
 (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitation imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.
 
 
 47
 488 F.2d at 717-19. In determining a reasonable award of attorney's fees, the trial judge must consider the 12 factors in Johnson and articulate the basis for the award. Matter of First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).
 
 
 48
 Hedrick's attorney indicated that he had not kept a record of his time because he had accepted the case on a contingency fee basis, but estimated that he had spent approximately 300 hours working on the case. Acknowledging that a reduction in the hours claimed was probably warranted due to the absence of substantiating records, Hedrick's attorney requested the court to find at a minimum that he had spent 200 hours in connection with the case. Hercules was represented by two attorneys who indicated that they had each spent approximately 150 hours working on the case. Hedrick's attorney stated that his general hourly fee is $75 but that his rate varies depending on the nature of the case. Hedrick's attorney also noted that he had expended $1,200 in costs in connection with the case.
 
 
 49
 In considering the Johnson criteria, the trial court concluded that 200 hours was a reasonable estimate of the time spent by Hedrick's attorney in light of the nature of the case and the amount of time spent by the attorneys for Hercules. The trial court concluded that the expertise of Hedrick's attorney in the area of employment discrimination justified a somewhat larger fee than the customary fee charged in such a case. The trial court further acknowledged that Hedrick's attorney had taken the case on a contingency fee basis and had obtained a verdict and a substantial award of damages in favor of his client. However, the trial court also noted that the case did not present novel or difficult questions of law. The trial court determined that the acceptance of this case did not preclude Hedrick's attorney from working on other cases. Furthermore, the trial court found no unusual circumstances in regard to the nature and length of the professional relationship between Hedrick's attorney and his client. Finally, the trial court noted that awards of attorney's fees in similar cases ranged from $20 per hour to over $100 per hour. The trial court concluded that an hourly fee of $120 was appropriate in light of the expertise and experience of Hedrick's attorney and the results obtained. The trial court, therefore, awarded Hedrick's attorney $24,000 in attorney's fees based on the finding that 200 hours were spent in connection with the case. In addition, the court awarded $1,200 in costs resulting in a total award of $25,200. We conclude that the trial judge did not abuse his discretion in awarding attorney's fees. The trial judge carefully considered the factors set forth in Johnson and clearly articulated his findings and reasons for the award.
 
 
 50
 Hedrick's counsel seeks an additional award of attorney's fees for his services rendered on appeal. An award of attorney's fees for services rendered in an ADEA case on appeal is within the discretion of the appellate court. Kelly v. American Standard, Inc., 640 F.2d 974 (9th Cir. 1981); Cleverly v. Western Electric Co., 594 F.2d 638 (8th Cir. 1979); Montalvo v. Tower Life Building, 426 F.2d 1135 (5th Cir. 1970). We conclude that an award of $2,500 in attorney's fees for services rendered by Hedrick's counsel on appeal is reasonable in light of the expertise and experience of Hedrick's attorney, the time and labor involved and the results obtained. Accordingly, Hedrick's counsel is awarded $2,500 in attorney's fees for services rendered in connection with this appeal.
 
 
 51
 AFFIRMED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452 October 14, 1980
 
 
 **
 Honorale Charles R. Scott, District Judge of the Middle District of Florida, sitting by designation
 
 
 [1]
 Hedrick began working for Hercules in January 1941 and has held several positions involved in the production of explosives including Shift Supervisor, Line Supervisor, Assistant Plant Manager, Plant Manager, and Manager of Explosives. Although Hedrick has spent most of his career managing the Bessemer, Alabama plant, he has held positions with Hercules in a number of other locations
 
 
 [2]
 29 U.S.C. §§ 621, et seq. The ADEA provides as follows:
 (a) It shall be unlawful for an employer
 (1) to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
 (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
 (3) to reduce the wage rate of any employee in order to comply with this chapter.
 29 U.S.C. § 623(a).
 
 
 [5]
 The ADEA provides that the prohibitions under the Act shall be limited to individuals who are at least 40 years of age but less than 65 years of age. 29 U.S.C. § 631
 
 
 [6]
 In McCorstin this Court noted that the primary purpose of requiring the plaintiff to show that his or her replacement was outside the protected age group was to establish evidence of discrimination. 621 F.2d at 753. Recognizing that age discrimination in employment often arises even where the plaintiff's replacement is within the protected age group, the McCorstin court modified the fourth element to require only evidence that age was a determinative factor. Id. at 753-54. This modification accurately reflects the statutory language which provides as follows:
 (a) It shall be unlawful for an employer
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. (Emphasis added).
 29 U.S.C. § 623(a)(1).
 
 
 [3]
 The ADEA provides as follows:
 (b) the provisions of this (Act) shall be enforced in accordance with the powers, remedies, and procedures provided in sections 11(b), 16 (except for subsection (a) thereof), and 17 of (the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 211(b), 216, 217)), and subsection (c) of this section.
 29 U.S.C. § 626(b).