**James H. POWELL, Jr.,
Plaintiff-Appellee,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, Defendant-Appellant.**

No. 85–4189.

United States Court of Appeals,
Fifth Circuit.

April 28, 1986.

---

Russell J. Thomas, Jr., Cindy Rhodes Victor, Detroit, Mich., Marilyn P. Maledon, Rockwell Intern. Corp., Pittsburgh, Pa., M. Curtiss McKee, Jackson, Miss., for defendant-appellant.

Keith R. Raulston, Jackson, Miss., for plaintiff-appellee.

* District Judge of the Southern District of Texas,

Before RANDALL and WILLIAMS, Circuit Judges, and HINOJOSA,* District Judge.

JERRE S. WILLIAMS, Circuit Judge:

Appellee James Powell brought suit against appellant Rockwell International Corp. for violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* The jury found no age discrimination but found that Powell had been the victim of a retaliatory discharge in violation of 29 U.S.C. § 623(d), and it awarded damages. Rockwell appeals arguing that the evidence does not support the verdict and that the jury instructions were flawed. Finding no reversible error, we affirm the judgment of the district court.

## Facts

James Powell became employed in 1961 as a time-study engineer with Line, Inc. in Grenada, Mississippi. Rockwell acquired Line, Inc. in 1965. After holding a series of assignments, Powell rose to the position of manufacturing manager by January 1980. Throughout his employment with Rockwell, Powell received acceptable performance reviews, merit pay raises, and cost of living increases. Powell's salary increased from approximately $7,000 in 1961 to approximately $44,000 by 1983.

In January 1980, Jay McCann was designated plant manager at the Grenada facility. Powell had assumed that he would be promoted to plant manager because he had acted as a "back-up" to the previous plant manager. McCann designated John Hubbuch as the "back-up" to himself in his absence from the plant. In July 1980, McCann reorganized his staff and Powell was redesignated materials manager. McCann apparently became increasing disenchanted with Powell's performance. In February 1982, Powell was reassigned as quality control manager. In July 1982, Powell was further reassigned to the position of quality control engineer. Powell remained in this position until his employment was terminated on June 2, 1983.

sitting by designation.

Powell filed this lawsuit on November 3, 1982. He contended that he had been denied promotions and transferred to inferior positions because of his age, in violation of the ADEA. Powell also filed an ADEA complaint with the EEOC. On May 5, 1983, Rockwell deposed Powell for purposes of this lawsuit and found that Powell had removed a document from the plant without Rockwell's knowledge or authorization. Powell apparently removed this document to help himself in this litigation.[1] Removing this document was in conflict with Rockwell company policy. Citing company policy, Rockwell terminated Powell's employment on June 2, 1983. Powell contended that the real reason for discharge was retaliation for the filing of the EEOC complaint and this lawsuit, and contended that the May deposition was used by Rockwell to attempt to "ferret" out any reasons that would look good on paper for firing Powell.

The jury rendered a special verdict pursuant to F.R.Civ.P. 49(a). At issue on this appeal is the critical jury finding that the fact that Powell filed an ADEA complaint with the EEOC and filed this court action was "a determinative factor" in Rockwell's discharge of Powell. The jury awarded Powell $134,959 in damages for the retaliatory discharge.

Rockwell filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Powell filed a motion to alter or amend the judgment, or, in the alternative, for a new trial limited to certain issues. Powell also moved for an award of attorney's fees. The district judge granted Rockwell's motion for judgment notwithstanding the verdict in part, and set aside the jury verdict insofar as it awarded "front pay." The district judge held that the available remedy of reinstatement precluded the awarding of front pay in this case. This ruling disallowed $105,-262 of the damages and left intact the back pay award of $29,697. The district judge also granted Powell's motion to alter or

amend the judgment in part, and held that the back pay award should be doubled as liquidated damages under 29 U.S.C. § 626(b). The district court also awarded attorneys' fees and costs, for a total judgment against Rockwell of $98,539.42.

On appeal, Rockwell argues: (1) the district court erred in partially denying its motion for judgment notwithstanding the verdict because there was insufficient evidence that Rockwell's permissible stated reason for firing Powell was a mere pretext; (2) the district court erred in denying Rockwell's motion for a new trial either because irrelevant evidence was submitted at trial or because the jury was incorrectly instructed as to the burden of proof applicable to establish pretext; and (3) the district court erred in awarding liquidated damages because the district court incorrectly defined "willfulness" in the instructions, and because there was no evidence to support a finding of "willfulness."

### I. *Sufficiency of the Evidence*

Rockwell's contention at trial was that Powell was terminated because he removed a highly sensitive document from the company without permission. Rockwell urges on appeal that there is insufficient evidence from which the jury could have found that this valid reason for termination was a mere pretext. In support of its argument, Rockwell claims that it first discovered that Powell had removed the sensitive document when it took his deposition in May 1983. Powell was fired in June 1983. Powell counters that Rockwell was merely using the May deposition to find any reason it could to fire Powell as a pretext for its true goal of dismissing him because he had filed this current court action and the ADEA claim with the EEOC.

A jury verdict should not be disturbed unless, after viewing "all of the evidence—not just that evidence which supported the nonmovers' case—... in the light and with all reasonable inferences most favorable to the party opposed to the motion," the court

---

1. Rockwell contends that Powell also removed this document in order to help himself acquire

confidential financial information to be used in a contemplated purchase of the Grenada plant.

is able to conclude that "reasonable men" could not have arrived at such a verdict. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). "A jury finding based on sharply conflicting evidence is conclusively binding" on this Court. *United States v. 6,162.78 Acres of Land,* 680 F.2d 396, 398 (5th Cir.1982).

■ After a review of the record, we find the evidence sufficient to support the jury's finding that Rockwell's stated reason for terminating Powell was a mere pretext. In denying Rockwell's motion for judgment notwithstanding the verdict, the district court specifically found that "no doubt exists that there is ample evidence to support the verdict [that the reasons given by Rockwell for the dismissal were pretextual]." Powell introduced evidence that Rockwell officials made specific threats against him for filing this suit, told him that he would be "dealt with," and treated him differently from other employees that engaged in much worse violations of company policy.[2] There was also evidence that Rockwell officials had attempted to "buy out" Powell—with six months severance pay, savings plan benefits, and a favorable recommendation for further employment— if Powell would dismiss his suit and resign voluntarily. Based on this evidence, we are unable to conclude that "reasonable men" could not have found that Rockwell's stated reason for terminating Powell was pretextual, and we therefore reject Rockwell's attack on the sufficiency of the evidence.

## II. *Supervisor's Testimony*

■ During the trial Powell was allowed to introduce evidence that his supervisor, Jay McCann, had charged personal traffic tickets to the company and had made false statements to the company in violation of company policy in order to acquire funds to be used to construct a softball field. Powell offered this evidence to show disparate treatment. McCann had not been severely punished after his violations of company policy,[3] but Powell was discharged allegedly because he violated company policy when he removed the document. Rockwell argues that it was error to introduce this evidence because the evidence was irrelevant. Rockwell urges that the evidence did not show disparate treatment because the offenses of McCann and Powell were too dissimilar.

A trial court's ruling on relevancy of evidence "will not be disturbed absent a clear showing of an abuse of discretion." *United States v. Brown,* 547 F.2d 1264, 1266 (5th Cir.1977). We do not find a clear abuse of discretion in the admission of this testimony. This evidence tends to show that the company has been lenient with another employee who engaged in violations of company policy involving a serious matter—falsification. The evidence was directly relevant, therefore, to the question of whether Powell was in fact discharged for violation of company policy in removing the document, or whether that reason was a mere pretext for retaliating against Powell for filing his ADEA complaint.[4]

Rockwell contends that the McCann testimony was inadmissible under our holding in *Marathon LeTourneau Co. v. NLRB,* 699 F.2d 248 (5th Cir.1983). In *Marathon,* plaintiff claimed that he was fired as a result of antiunion animus. The employer countered that he was fired for excessive absenteeism. The employee sought to in-

---

**2.** *See* discussion of McCann testimony, section II *infra.*

**3.** McCann's punishment was a warning and a 25% reduction in his incentive compensation award for one year.

**4.** Powell argues that Rockwell cannot raise this point on appeal because Rockwell did not object to the admission of the testimony concerning McCann on the ground of relevancy at the time that it was offered. The record indicates that the attorney for Rockwell at first objected on the ground of relevancy to the evidence, and then later changed his objection to a different (and unclear) ground. Although the Rockwell attorney certainly could have made his objection more lucid, there was at one point an objection on the ground of relevancy, so there was no waiver of his right to complain on appeal. *See Industrial Development Board v. Fuqua Industries,* 523 F.2d 1226 (5th Cir.1975).

troduce a summary exhibit chart showing all discharges over a one year period and the reasons for the discharges. This summary was prepared from the company's personnel records. The ALJ refused to allow the admission of the chart, and this Court held that the ALJ did not abuse his discretion in not admitting the chart.

*Marathon* does not establish the inadmissibility of the evidence of McCann's violations of company rules. *Marathon* does not control under any of three separate analyses: First, *Marathon* did not hold, as Rockwell asks us to hold, that the ALJ abused his discretion in his evidentiary ruling. In the present case, the district court allowed the introduction of the evidence. *Marathon* does not stand for the proposition that such evidence cannot be admitted; it merely held on its facts that the ALJ did not abuse his discretion in not admitting the evidence. Indeed, *Marathon* made clear that although the summary chart was excluded, the "underlying records were admissible ... A more probative exhibit or the actual records of employees could have been introduced." *Id.* at 254.

Second, the summary chart in *Marathon* was not relevant evidence because it was inadequate to prove the standards used by the company in justifying the discharge. The chart merely listed the discharges over a one year period and the reasons for the discharges. The reason given for the plaintiff's firing in *Marathon* was excessive absenteeism. The summary chart, however, did not quantify the absenteeism for which other employees were discharged. The court concluded, therefore, that the chart meant "absolutely nothing." *Id.* By contrast, in the present case the fact that McCann was not punished severely for violations of company policy involving serious falsifications is clearly probative on the question of whether Powell's firing was motivated by his violation of company policy. This evidence is on its face relevant, and the jury properly was allowed to hear the evidence and draw its own conclusions as to whether the evidence indicated disparate treatment.

Finally, in *Marathon* all of the evidence contained in the summary chart was already admitted or could have been admitted in other forms. *Id.* In the present case, Rockwell sought to prohibit the introduction of all testimony concerning McCann's violations of company policy. *Marathon* stands only for the proposition that the ALJ in that case did not abuse his discretion in refusing to admit a summary chart into evidence when that summary chart was at best cumulative of the other evidence, and at worst meant absolutely nothing at all. In the present case, the McCann evidence was both probative and noncumulative. We hold that the district court did not abuse its discretion in admitting evidence concerning McCann's violations of company policy.

### III. *Burden of Proof*

Rockwell urges that the district court did not properly instruct the jury on the burden of proof. The court instructed the jury that plaintiff had the burden of proof on all of the elements of his cause of action. Rockwell urges that the district court should have instructed the jury pursuant to the *McDonnell Douglas* formula under which the plaintiff must establish a prima facie case, the defendant must then articulate a permissible reason for discharging plaintiff, and then plaintiff must disprove by a preponderance of the evidence defendant's claimed reason for discharge. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

We find that the jury was properly instructed in the present case. In evaluating a jury charge, we must view the instructions as a whole. *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1178 (5th Cir.1982), *vacated on other grounds*, 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476. No particular form of words is essential if the instruction as a whole conveys a correct statement of the applicable law and is not misleading to the jury. *Wright v. Wagner*, 641 F.2d 239, 242 (5th Cir.1981);

*Robert v. Conti Carriers & Terminals, Inc.,* 692 F.2d 22, 24 (5th Cir.1982).

In any event, in the present case the judge placed the burden on plaintiff throughout to prove his case, and this was a correct statement of the law. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The judge nowhere placed any burden on Rockwell. Rockwell has no room to complain, therefore, about the district court not instructing on "shifting" burdens of proof. Under the judge's instructions, Rockwell never had the burden to prove anything. Thus, the placement of the entire burden of proof on Powell was in accordance with the law and in any event could not possibly have harmed Rockwell.

▪ Rockwell argues that *McDonnell Douglas* requires that this "shifting" instruction be given. The *McDonnell Douglas* formula, however, is applicable only in a directed verdict or summary judgment situation. *United States Postal Service v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). The *McDonnell Douglas* analysis "is not the proper vehicle for evaluating a case that has been fully tried on the merits." *Williams v. Southwestern Bell,* 718 F.2d 715, 718 (5th Cir.1983); *Clopton v. City of Dallas,* 773 F.2d 1235 (5th Cir.1985) (unpublished). The law is clear. The burden of proof in the trial itself remained wholly upon the plaintiff.

## IV. *Liquidated Damages: Willfulness*

Rockwell urges that the district court erred in awarding liquidated damages under 29 U.S.C. § 626(b). Under that section, a finding of "willfulness" is a prerequisite to an award of liquidated damages. In the present case, the district judge instructed the jury that: "a violation of a law is willful if defendant knew, or *reasonably should have known,* that its conduct was reasonably likely to be a violation of the legal rights of the plaintiff" (emphasis added). The jury found that Rockwell had acted willfully in terminating Powell's employment, but awarded zero liquidated damages. In Powell's motion to alter or

amend the judgment, he argued that the district court was required to award liquidated damages since there was a willful violation of the ADEA. The district court agreed, and doubled the back pay award as liquidated damages. Rockwell urges that: (1) the district court incorrectly defined "willful"; and (2) the district court erred in awarding mandatory liquidated damages.

### *Willfulness*

Rockwell asserts that "willfulness" was incorrectly defined by the trial court under the law as established by *Transworld Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). *Thurston* said, "a violation is 'willful' if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at ——, 105 S.Ct. at 625, 83 L.Ed.2d at 537. *Thurston* removes the characterization of "willful" from violations when defendant merely "should have known" his actions would violate the law.

The district court denied Rockwell's motion for judgment notwithstanding the verdict, or, in the alternative, for new trial, on the grounds that: (1) Rockwell did not object to the charge on this ground and therefore did not preserve its objection; and (2) in any event, any error in the definition was harmless in the context of the instant facts because a specific jury finding of retaliation necessarily meant that the jury found "willfulness" under the *Thurston* definition. We find that there was error in the instruction under *Thurston* and that Rockwell did make objection. But we further find that the error in the definition of willfulness given by the district court was harmless.

▪ We first consider the procedural right of Rockwell to raise this argument. Rockwell urged at the charge conference that the definition of willfulness was incorrect, and asked the judge to include a "good faith" modification to the charge. Because the record discloses that Rockwell made known its position to the judge that it

was dissatisfied with the willfulness instruction, we find that it did not waive its right to pursue this claim at a later time. *See Lang v. Texas & Pacific Railway Co.,* 624 F.2d 1275, 1279 (5th Cir.1980). Counsel for Rockwell was not obligated to anticipate the *Thurston* holding which was decided after the trial of this case.[5] We conclude that Rockwell has not waived its right to object to the willfulness instruction.

Nevertheless, we find that while the willfulness instruction was error because of the intervention of the *Thurston* decision, the error was harmless. The definition of willfulness given by the judge in the present case was incorrect under *Thurston* because it characterized violations as "willful" when defendant merely "should have known" the actions taken would violate the ADEA. In the context of the present facts, however, the correct instruction would have made no difference in the outcome of the case. The jury specifically found that Rockwell terminated Powell in retaliation for filing his ADEA claim. McCann, a Rockwell official, testified that he knew that retaliatory discharge was a violation of law. In any event, if Rockwell officials did not "know" that firing an employee in retaliation for filing an ADEA claim was illegal, then that action was certainly "reckless." In the context of present facts, therefore, the jury finding of retaliatory discharge necessarily found "willfulness" as defined by *Thurston*.[6]

5. The district court rejected Rockwell's argument that it was not required to object because the *Thurston* decision changed the law and was decided after the outcome of the trial. The district court relied upon the authority of *Del Rio Distributing v. Adolph Coors,* 589 F.2d 176 (5th Cir.1979). The court stated:

"*Del Rio* rejected a similar argument where the Supreme Court changed the law in the middle of the trial. *Del Rio* noted that the Supreme Court had granted certiorari prior to the *Del Rio* trial; the same is true here. As in *Del Rio,* the defendant cannot persuasively argue it was surprised by the Supreme Court decision."

We do not agree that the *Del Rio* decision controls the present case. In *Del Rio,* the plaintiff voluntarily waived any claims it might have had based upon any alleged state antitrust violations. Plaintiff was proceeding under the *Schwinn* per se rule of antitrust law, but the Supreme Court had already granted certiorari in the *Sylvania* case. *Sylvania* overruled the *Schwinn* rule, and reinstated the rule of reason in territorial restriction cases. This Court rejected plaintiff's argument that this change in the law should invalidate the waiver because the waiver occurred after the Supreme Court had granted certiorari in *Sylvania,* and because plaintiff failed to show any manifest injustice. Thus, *Del Rio* held that plaintiff should not have waived its claim if it wanted to preserve the claim because plaintiff knew from the grant of certiorari in the *Sylvania* case that there was a possibility that the *Schwinn* rule would be invalidated.

In the present case, it is true that certiorari was granted in *Thurston* while this case was at trial. That fact, however, gave no guidance to Rockwell's counsel. In *Coleman v. Jiffy-June Farms,* 458 F.2d 1139 (5th Cir.1971), this Court held that willfulness could be found if the employer merely knew that the ADEA was "in the picture," and that willfulness could be found even if no bad faith was involved in the employer's actions. The grant of certiorari in *Thurston* may have notified counsel for Rockwell that this definition of willful might be reexamined. Even this was far from certain because certiorari was granted on issues besides liquidated damages in *Thurston,* including the liability determination. In addition the grant of certiorari in *Thurston,* gave virtually no guidance as to *how* the *Jiffy-June Farms* definition might be changed. The simple fact that certiorari was granted in *Thurston* did not help counsel for Rockwell know what objection to make during the trial. Thus, we cannot say that *Del Rio* mandated that counsel for Rockwell waived error by failing to anticipate the definition of willful adopted by *Thurston.*

6. Rockwell argues that a finding of retaliatory discharge cannot be *per se* willful under *Thurston* because there exist cases where retaliation was found but not willfulness. However, the only case cited by Rockwell, *EEOC v. United States Steel Corp.,* 583 F.Supp. 1357 (W.D.Pa. 1984), does not support that proposition.

We need not decide whether in all cases a finding of retaliation necessarily finds *Thurston* "willfulness". On the present facts, there is no doubt that the jury's finding of retaliatory discharge found willfulness. Rockwell's only explanation for Powell's discharge was that he was fired for removing a sensitive document from the company. Thus, the only question before the jury was whether Powell was discharged for violating company policy, or whether he was discharged for filing his ADEA claim. Because the jury specifically found that Powell was discharged for filing the ADEA claim, there exists

Rockwell also contends that there was no evidence to support a finding of willfulness by the jury. As noted above,[7] there was firm evidence supporting the jury's finding that Rockwell's stated reason for Powell's discharge was pretextual. Once Rockwell's reason for discharging Powell was rejected as pretextual, then it becomes obvious that the only rationale left for the discharge was Powell's explanation of retaliation.[8] Thus, there was ample evidence to support the finding that Rockwell was willful in its discharge of Powell.

### Liquidated Damages

Although the jury found that Rockwell had acted "willfully" in discharging Powell, it specifically denied liquidated damages. In partially granting Powell's motion to alter or amend the judgment, the district judge doubled the back pay verdict so as to award liquidated damages because he found that "liquidated damages are mandatory where a defendant acts willfully in violating the ADEA."

Rockwell argues that liquidated damages are not required as a matter of law to be awarded upon the finding of a willful violation because the trial court should review evidence of the employer's good faith. *Hays v. Republic Steel Corp.*, 531 F.2d 1307 (5th Cir.1976). For example, in *Hedrick v. Hercules, Inc.*, 658 F.2d 1088 (5th Cir.1981), we noted:

[T]his Court in *Hays* ... held that liquidated damages were not automatically payable upon a finding of a willful violation of the ADEA but rather that a trial

judge could consider evidence of the employer's good faith in determining whether to award liquidated damages.
*Id.* at 1095.

We first note that both *Hays* and *Hendrick* were cases involving age discrimination claims rather than retaliatory discharge claims. We have discovered no cases which examine good faith in the context of a finding of retaliation. Indeed, a finding of retaliation strongly implies that there was no good faith. Thus, we are not convinced that the *Hays* rule was ever applicable to a retaliatory discharge case.

But even if we assume that the *Hays* rule could have been properly applied in the context of retaliatory discharge, this rule has no vitality after the *Thurston* decision. Prior to *Thurston*, it was possible to find a willful violation, and also find that the employer had acted in "good faith." *Id.* at 1096. Because Congress did not intend to impose liquidated damage liability upon employers for good faith violations, the *Hays* rule permitted the court discretion in awarding liquidated damages. Under the *Thurston* rule, however, "good faith" can no longer coexist with "willfulness". The result is that only "knowing" or "reckless" violations of the ADEA are subject to liquidated damages. Thus, a further examination of good faith becomes irrelevant because it has already been factored into the *Thurston* "willfulness" definition.

Because we hold in the present case that the jury finding that Powell was fired by Rockwell in retaliation for exercising

---

no possibility of any good faith action upon which Rockwell can rely to avoid liquidated damages. In other words, any assertion that Rockwell acted in good faith in terminating Powell and that its actions were not in reckless or knowing violation of the ADEA was rejected by the jury when the jury found that the justifications for firing Powell offered by Rockwell were pretextual.

7. Section I, *supra.*

8. Rockwell argues that it acted in good faith in terminating Powell because it relied upon advice of counsel. We have discovered no evidence in the record indicating that Rockwell relied in good faith upon advice of counsel in

terminating Powell. Rockwell never argued that it was unaware that to fire an employee in retaliation for filing an ADEA claim was a violation of the ADEA. Rather, Rockwell's position was that it did not retaliate at all, a position rejected by the jury.

Moreover, if counsel for Rockwell advised it that it could terminate Powell for violation of company policy, then that advice was not incorrect. The jury found as a factual matter, however, that Rockwell did not terminate Powell for violating company policy, but rather, in retaliation for filing his ADEA complaint. Thus, the jury rejected Rockwell's explanation for the termination, and consequentially Rockwell's good faith defense, by finding retaliatory discharge.

288

ADEA rights necessarily found willfulness under *Thurston,* we also conclude that the jury necessarily rejected any "good faith" action on the part of Rockwell in discharging Powell. Thus, the award of liquidated damages was proper.

### Conclusion

We reject Rockwell's attacks on the evidence and on the jury instruction on burden of proof. We find that the incorrect instruction as to willfulness was harmless error in the context of the present facts. We affirm the judgment of the district court.

AFFIRMED.