**William S. COWEN, Plaintiff,**

v.

**STANDARD BRANDS, INCORPORATED, Defendant.**

**Civ. A. No. 81–AR–1010–S.**

United States District Court, N.D. Alabama, S.D.

Oct. 25, 1983.

---

Burton H. Brody, New York City, Thomas A. Carraway, Clarence M. Small, Jr., Rives & Peterson, Birmingham, Ala., for defendant.

Louis W. Scholl, Scholl, Allen & Caldwell, Donald W. Davis, Davis & Howland, Birmingham, Ala., for plaintiff.

## MEMORANDUM OPINION

ACKER, District Judge.

This case was brought by a 59 year old salesman, William C. Cowen (Mr. Cowen), pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (ADEA), claiming that because of his age he was terminated by defendant, his employer, Standard Brands, Incorporated (Standard Brands). Standard Brands denies any age discrimination and affirmatively asserts as a defense that in a reorganization of its sales force, which was designed without any motive to eliminate its older salesmen, and which was uniformly applied, Mr. Cowen was only incidentally adversely affected.

At the conclusion of the evidence, Standard Brands filed a motion for directed verdict pursuant to Rule 50, F.R.Civ.P. In support of its motion Standard Brands not only made the arguments which it made in support of the same motion at the conclusion of plaintiff's case, but urged for the first time an absolute defense based on *Ford Motor Company v. EEOC,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). The Court was unfamiliar with *Ford Motor*

and had not previously had an opportunity to read the case and to ascertain what significance, if any, it has in this case. Under the circumstances, the Court was unwilling at that moment to grant defendant's Rule 50 motion without first seriously studying *Ford Motor.* Therefore, the Court took defendant's motion under advisement and informed both parties that the Court would treat defendant's motion as a motion for judgment notwithstanding the verdict in the event the jury should bring in a verdict in favor of Mr. Cowen. The jury thereupon brought in a verdict in favor of Mr. Cowen both for back wages and for liquidated damages under ADEA. In an abundance of precaution Standard Brands filed a redundant motion for judgment n.o.v. and an alternative motion for new trial.

Standard Brands presents three basic arguments in support of its motion for judgment n.o.v. First, it says that plaintiff offered no substantial evidence, using the test of *Boeing v. Shipman,* 411 F.2d 365 (5th Cir.1969), to support his allegation that Standard Brands' plan for a reduction in force was a pretext or a cover up for age as a determining cause for terminating Mr. Cowen, and that Mr. Cowen failed in his ultimate burden of proof under the analysis of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Secondly, Standard Brands says that there is no substantial evidence of a "willful violation" so as to justify liquidated damages under 29 U.S.C. § 626(b), or, in the alternative, that the question of "liquidated damages" is a matter for the Court's discretion and not for the jury. Thirdly, Standard Brands says that its offer to Mr. Cowen of a comparable position in Pittsburgh, Pennsylvania, before suit was filed, while the controversy was under consideration by the EEOC, and before Mr. Cowen actually suffered any lost salary, precludes any claim by Mr. Cowen. For this proposition Standard Brands relies on *Ford Motor.* The Court will address these contentions in order.

### Was There Substantial Evidence Of Pretext?

■ The Court disagrees with Standard Brands' contention that under the *Boeing* requirement there is no substantial evidence here to the effect that its reorganization plan was a pretext for age discrimination and that Mr. Cowen's age was, in fact, a determining factor in his termination. The Court agrees that if the jury had reached the conclusion urged upon it by Standard Brands and had believed Standard Brands' testimony that it was only exercising a legitimate business judgment without in any way considering the ages of the various members of its sales force when it designed its plan of reorganization, such a jury verdict would have been entirely reasonable and would have been invulnerable. However, in the Court's opinion, the following items of evidence do form a basis for the jury's indulgence of logical inferences and findings to the contrary, and in favor of Mr. Cowen's contention that the reorganization was a pretext for age discrimination:

### Facts Meeting the *Boeing* Test

(1) Mr. Casey, the officer of Standard Brands who was primarily responsible for the reorganizational design, and who explained its rationale from the witness stand, testified that the plan was "consistent", in that it was applied uniformly across-the-country and was based on the single criterion or consideration of displacing a lower level salesman with a higher level salesman where the two happened to be in the same location. The idea, according to Mr. Casey, was to minimize disruption and the moving of salesmen while giving preference to higher ranking salesmen in the reduction in force. Although Mr. Cowen and Mr. Barry, Mr. Cowen's superior who replaced him in the shakeup, both lived and worked in Birmingham, Alabama, so that the consolidation criterion was applied precisely in Birmingham as articulated by Mr. Casey, it did not work exactly the same way in Dallas, Texas. Rather, in

Dallas the demoted higher level salesman, Mr. Chapin, had been located in Dallas where two lower level salesmen lived. Yet, Mr. Chapin was transferred to Houston to displace Mr. Jack Green, a lower level salesman 59 years old, who was terminated as Mr. Cowen was. Standard Brands' hopeful explanation of this deviation from norm is that Mr. Chapin owned property in Houston and had previously lived there. Arguably, however, this deviation from norm militates against the "consistency" required to eliminate all possibility of age bias. Mr. Chapin's transfer was and is sufficiently "inconsistent" and different to raise a suspicion upon which Mr. Cowen could mount a legitimate jury argument that the reorganization plan was a pretext for eliminating Mr. Cowen and Mr. Jack Green, both in their late 50's.

(2) The statistics and percentages offered by Standard Brands to demonstrate that there was no overall adverse impact by age on its total sales force, arguably are skewed in that they do not present an impact picture limited to those salesmen who were forced to relocate or who were terminated. Arguably, if a narrower focus were taken, a disparate impact based on age would appear. Also, statistics within very small universes can be rejected or looked at with a jaundiced eye because of their speculative predictive value. *White v. City of San Diego*, 605 F.2d 455, 461 (9th Cir.1979). Put another way, the smaller the group the more probable that a statistical analysis can be manipulated. The group here was very small.

(3) The *sequence* of Standard Brands' offers of transfer or relocation also is arguably significant. The evidence is logically susceptible to the interpretation that Standard Brands preferred its younger salesmen when it offered relocation to comparable jobs. For instance, when relocation offers were extended to the younger salesmen earlier than to Mr. Cowen or to Mr. Jack Green, the options were perhaps more varied and perhaps more attractive. Arguably, the relocation offers had an age pattern to them, so

that by the time Standard Brands got around to offering Mr. Cowen a relocation after he had first been told categorically and unequivocally of his termination without an offering of relocation, all that was left was Pittsburgh, Pennsylvania. The Pittsburgh job was never filled, arguably indicating that Pittsburgh was less than the most desirable territory. This inference is reinforced by the undisputed fact that Mr. Belcastro, a younger man who was assigned the Pittsburgh territory before the reorganization, was offered and took the Chicago job before Mr. Cowen was offered *any* relocation. Furthermore, the fact that Standard Brands made available to Mr. William Green (a different and younger Mr. Green from the 59 year old Mr. Green in Dallas), an independent opportunity in Tampa, Florida, without first discussing the opportunity with either of its two men over 50, can make a pretty good argument for "pretext".

There is another angle to this case which calls for comment. It arises from *Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588 (5th Cir.1978), which has become the law of the Eleventh Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981). In *Marshall,* the Fifth Circuit recognizes that inasmuch as ADEA expressly provides for affirmative defenses (something Title VII does not provide) when an employer affirmatively interposes such a statutory defense, the employer undertakes not only the burden of *articulating* a legitimate, nondiscriminatory reason for its decision as in *McDonnell Douglas* and *Burdine,* but undertakes the burden of persuasion or of proof as to the statutory reason if it is the same reason. The Fourth Circuit has reasoned similarly in *E.E.O.C. v. Baltimore & Ohio R.R.,* 632 F.2d 1107 (4th Cir.1980), *cert. denied,* 454 U.S. 825, 102 S.Ct. 113, 70 L.Ed.2d 98 (1981), and *Arritt v. Grisell,* 567 F.2d 1267 (4th Cir.1977). In the instant case *Standard Brands* answered Mr. Cowen with what it described as its "Affirmative Defense", in which it alleged:

Plaintiff's termination resulted from a reorganization and resultant force reduc-

tion designed to meet the business needs and purposes of Standard Brands Incorporated. Plaintiff's age played no part in defendant's decision to reduce its force and terminate plaintiff. Rather, plaintiff's termination was for business reasons wholly unrelated to plaintiff's age, or to plaintiff's age relative to any other employee.

This defense invokes the language of 29 U.S.C. § 623(f)(1). If this Court applies the *Marshall* analysis rather than *McDonnell Douglas* and *Burdine,* Standard Brands undertook the affirmative burden of proving its above quoted defense once Mr. Cowen met his minimal burden of proving a prima facie case. If Standard Brands had the *Marshall* burden, the jury had the right to disbelieve Mr. Casey.

Because the Court concludes that Mr. Cowen made out a jury question under *Boeing* on the question of Standard Brands' motivation under ADEA, the Court declines to grant judgment n.o.v. in favor of Standard Brands based on its contention that Mr. Cowen failed in this burden of proof under ADEA. It is not necessary to decide whether the *Marshall* assessment of burden of proof or the *McDonnell Douglas* and *Burdine* assessment is applicable or correct. Under either analysis a jury question was presented. In reaching this conclusion the Court is mindful of the recent decision of the Fifth Circuit in *Elliott v. Group Medical & Surgical Services,* 714 F.2d 556 (5th Cir. 1983).

### Liquidated Damages

■ The jury awarded $55,500.00 in back wages and $55,500.00 in liquidated damages under 29 U.S.C. § 626(b). The Court finds nothing in ADEA which gives the Court the unbridled option to award or not to award liquidated damages, that is, unless plaintiff fails to meet the *Boeing* burden of presenting substantial evidence of a "willful violation" of the Act. This creates a redundancy. The pertinent portion of the Act states:

> That liquidated damages shall be payable *only in cases of willful violations of this chapter....* In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equita-

ble relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section. (emphasis supplied).

29 U.S.C. § 626(b).

This provision was enacted as a means of assessing damages for the intangible claims such as mental anguish and punishment. The Court does not read any of this statutory language as forming any basis for taking away from the jury the question of liquidated damages. ADEA expressly provides for trial by jury, and it nowhere takes away that right. Neither can the language mean that liquidated damages are recoverable only if the employer is reading from 29 U.S.C. § 621, *et seq.* while he is engaging in an act of age discrimination.

In *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149 (7th Cir.1981), the Seventh Circuit holds that Congress did not intend that liability for a violation of ADEA necessarily be predicated upon a showing of the defendant's state of mind and that this liquidated damage provision was added to provide a device for punishing a defendant where there is a "willful violation", meaning, according to the Seventh Circuit, a discriminatory state of mind. This Court cannot understand and disagrees with the Seventh Circuit's reasoning. In a "disparate treatment" case, such as the instant one, *McDonnell Douglas* and *Burdine* require an ultimate showing of an intent to discriminate, and that any articulated non-discriminatory reason necessarily is a pretext. How can a facially non-discriminatory scheme be a pretext and yet there be no intent to discriminate? Perhaps the *McDonnell Douglas* and *Burdine* rationale should not have been applied to ADEA cases, but it has been so applied. Therefore, this Court cannot accept the *Syvock* rationale as an explanation of congressional intent. In fact, it is difficult if not impossible to make sense of congressional intent in 29 U.S.C. § 626(b) as long as the federal

courts continue to apply *McDonnell Douglas* and *Burdine* to ADEA cases and refuse to acknowledge the possibility of liability for non-intentional age discrimination. This Court finds no material difference between "intentional" discrimination and "willful" discrimination. The law of liquidated damages in ADEA cases is confused and needs to be straightened out, but, as things now stand, the question of liquidated damages is a jury question, and, as a practical matter, liquidated damages are virtually automatic if there is to be any monetary recovery at all by the employee. If an employer deliberately and without one of the statutory exceptions discriminates because of age, 29 U.S.C. § 626(b), would now seem to double the damages.

### The Offer Of A Comparable Position As an Absolute Defense To The Claim For Back Wages

■ The evidence is in dispute as to the extent of Standard Brands' efforts to communicate to Mr. Cowen its intention to offer him a relocation to a comparable position in Pittsburgh. The evidence is without dispute, however, that Standard Brands did unequivocally offer Mr. Cowen such a transfer with no reduction in compensation shortly after Mr. Cowen filed his EEOC claim, before suit was filed and while Mr. Cowen's salary was being continued, and Mr. Cowen turned the offer down. Mr. Cowen's articulated reasons for turning down the offer were that his feelings were hurt and that he did not feel that the offer was bona fide. Neither of these reasons is recognized as an excuse in *Ford Motor Co. v. EEOC,* which clearly expresses the view of the Supreme Court that an employer can cut off all claims of a terminated employee for back pay by unconditionally offering the employee a job comparable to the job from which he was terminated. While *Ford Motor* was a Title VII case and not an ADEA case, the following rationale applies equally to ADEA cases:

> The "primary objective of Title VII is to bring employment discrimination to an end, *Albemarle Paper, supra* [422 U.S. 405], at 417, 95 S.Ct. [2362], at 2371 [45 L.Ed.2d 280], by "achiev[ing] equality of employment opportunities and remov[ing]

barriers that have operated in the past to favor an identifiable group . . . over other employees." *Ibid.* (quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 429–430, 91 S.Ct. 849, 852–853, 28 L.Ed.2d 158 (1971)). See also *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). "[T]he preferred means for achieving" this goal is through "[c]ooperation and voluntary compliance." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974).

102 S.Ct. at 3063–3064.

The Supreme Court continued:

> The rule tolling the further accrual of backpay liability if the defendant offers the claimant the job originally sought well serves the objective of ending discrimination through voluntary compliance, for it gives an employer a strong incentive to hire the Title VII claimant.

102 S.Ct. at 3064.

■ Mr. Cowen tries to avoid the thrust of *Ford Motor* by arguing that Standard Brands' offer was not "unconditional" in that he was only given one day within which to respond to the offer. Not only was there substantial evidence that Standard Brands attempted to communicate its offer earlier to Mr. Cowen, but giving Mr. Cowen the benefit of the doubt, if a one day response time constitutes a "condition" then a one month response time or a one year response time constitutes a "condition". In this case, Standard Brands' offer was "unconditional", as that term is used in *Ford Motor.* The Pittsburgh job, while perhaps not as attractive to Mr. Cowen as his Birmingham job, was in the legal sense "comparable". It carried the same salary and fringes, and the cost of the move to Pittsburgh would be borne by the employer. In the corporate real world an employee can expect to be moved from time to time, just as Mr. Cowen has been moved several times by Standard Brands earlier in his career. The fact that a number of long distance moves occurred during the reorganization which precipitated this lawsuit proves the preexisting right of Standard Brands to transfer its salesmen. A lateral long dis-

tance move, in and of itself, cannot constitute discrimination by a national corporation.

▮ There is simply no way to avoid the application of the *Ford Motor* rationale to this set of facts. When Standard Brands offered a comparable position while the matter was under submission to the EEOC, in conformity with the public policy favoring conciliation, and Mr. Cowen refused its offer, Mr. Cowen relinquished his claim for back wages. Therefore, the jury verdict for back wages is due to be set aside. And, if back wages are not due, then liquidated damages cannot be assessed.

### Equitable Relief

Because Mr. Cowen has declined Standard Brands' renewed offer of a comparable position in Pittsburgh, he also foregoes all claims for equitable relief.