**J. Donald DREZ, Plaintiff,**

v.

**E.R. SQUIBB & SONS, INC., Dennis W. White, and Norman E. Ferzoco, Defendants.**

**Civ. A. No. 86–2176–S.**

United States District Court, D. Kansas.

Nov. 30, 1987.

Fred W. Phelps, Jr., Phelps Chartered, Topeka, Kan., for plaintiff.

J. Steven Pigg, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

### I. INTRODUCTION

Before the court are the parties' post-trial motions. Plaintiff brought this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982), for unlawful age discrimination and retaliation. On August 24, 1987, the jury determined that defendant had not discriminated against plaintiff (who remains employed with defendant) on the basis of age, but it found that defendant had retaliated against plaintiff because of the latter's having filed a charge of discrimination with the Equal Employment Opportunity Commission. The jury awarded no monetary damages, but it found that the retaliation was a result of willful conduct by the defendant. Because of the unique posture of

this verdict, both sides have moved for post-trial relief.

## II. DEFENDANT'S MOTIONS

### A. *Judgment Notwithstanding the Verdict*

■ The court will first address defendant's motions. Defendant has moved for judgment notwithstanding the verdict on two issues: (1) plaintiff's failure to fulfill procedural prerequisites for the prosecution of an age discrimination claim; and (2) the lack of sufficient evidence to support the jury's verdict concerning retaliation. Preliminarily, defendant objects to plaintiff's utilization of affidavits by his attorneys as proof that plaintiff filed complaints with the appropriate state agencies and was subsequently denied relief by those agencies. Defendant disputes the manner of proof but not the fact itself. Defendant's argument is not well taken. The complaints were either filed or not; the court will certainly accept affidavits to establish this fact. Unless defendant has some evidence to the contrary, this is not an issue.

■ Defendant next argues that plaintiff failed to timely file a complaint with the appropriate state agencies. Section 14(b) of the ADEA (29 U.S.C. § 633(b)) provides that in the case of an alleged unlawful practice occurring in a state that has a law (1) prohibiting discrimination in employment because of age and (2) authorizing a state authority to grant and seek relief from such discriminatory practice (a "deferral state"), no suit may be brought under the ADEA before the expiration of 60 days after proceedings have been commenced under state law, unless such proceedings have been earlier terminated. In the present case, discriminatory acts allegedly occurred in Texas and New Jersey, both of which have laws prohibiting age discrimination and qualify as deferral states.

The court in *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) determined that resort to administrative remedies by claimants in states with agencies empowered to remedy age discrimination is mandatory, and a federal suit may not be brought unless the claimant has first commenced a proceeding with the appropriate state agency. *Id.* at 755–56, 99 S.Ct. at 2071–72. The Court found that the ADEA permits concurrent rather than sequential state and federal administrative jurisdiction, so that there is no requirement that the state filing come first. In fact, even after his federal age discrimination claim has been filed, a plaintiff may yet comply with section 14(b) by simply filing a signed complaint with the appropriate state agency. Meanwhile, the federal suit will be stayed (as long as the federal suit was timely filed) pending dismissal or other final action by the state agency. *Id.* at 756–65, 99 S.Ct. at 2071–76. Noncompliance with a state statute of limitations does not affect the ability of the plaintiff to pursue his federal cause of action. *Id.* at 759–63, 99 S.Ct. at 2073–75.

Notwithstanding the above, defendant argues that even though the ADEA permits the state complaint to be filed outside the state statute of limitations, the state administrative complaint must be filed within the 300–day limitation set forth in 29 U.S.C. § 626(d)(2):

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—
>
> . . . .
>
> (2) in a case to which section 14(b) [29 U.S.C. § 633(b)] applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

In *Oscar Mayer,* the court did not have the occasion to consider this argument. Defendant cites several authorities for the proposition that both the federal lawsuit and the state administrative complaint must be filed within 300 days of the alleged unlawful employment practice. *See Van Atta v. Kal–Aero, Inc.,* 555 F.Supp. 912, 916 (W.D.Mich.1983) ("[I]n the present

case, plaintiff's federal claims are timely because they were presented to both the state and federal agencies in compliance with section 626(d)(2)"); B. Schlei & P. Grossman, Employment Discrimination Law 101 (Supp. 1983–1985) ("The state proceeding is mandatory and must be initiated within the time limitation set by Section 626(d)(2).") The court respectfully disagrees.

By its terms, section 626(d)(2) governs only the timeliness of the charge filed with the Secretary of Labor. In *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the court dealt with the question of whether a federal statute setting a deadline on the filing of a charge of employment discrimination (42 U.S.C. § 2000e–5(e)) mandates the same deadline for filing with a state agency in a deferral state. The Court stated the following:

> Congress included no express requirement that state proceedings be initiated by any specific date in the portion of the subsection that related to time limitations in deferral States.... [W]e do not believe that a court should read in a time limitation that Congress has not seen fit to include ..., at least when dealing with "a statutory scheme in which lawmen, unassisted by trained lawyers initiate the process."

*Mohasco Co.*, 447 U.S. at 816 n. 19, 100 S.Ct. at 2492 n. 19 (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972)). The court requires no other support than this in overruling defendant's argument, especially in light of the noted similarity between Title VII and the ADEA. *See Equal Employment Opportunity Comm'n v. Wyoming*, 460 U.S. 226, 229–33, 103 S.Ct. 1054, 1056–58, 75 L.Ed.2d 18 (1983).

■ Defendant also contends that the evidence was legally insufficient to support a verdict in plaintiff's favor on the issue of retaliation. In a separate motion not presently under discussion, defendant itself points to evidence adduced at trial establishing that, after plaintiff filed his charge of discrimination, one of defendant's supervisory personnel dictated a memorandum to plaintiff's file stating that plaintiff was an "absolute moron." The trial included other evidence concerning harassment, criticism, and confrontation on the job after the charge was filed.

The ADEA makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1). This language is identical to Title VII's prohibition against discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). In a recent Supreme Court decision, *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), this statutory language was interpreted in regard to workplace harassment. The Court first determined that this language was not limited to economic or tangible discrimination, stating that the phrase "terms, conditions, or privileges or employment" evidences a congressional intent " 'to strike at the entire spectrum of disparate treatment.' " 477 U.S. at —, 106 S.Ct. at 2404, 91 L.Ed.2d at 58 (quoting *Los Angeles Department of Water and Power v. Manhart*, 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 1375 n. 13, 55 L.Ed.2d 657 (1978)). The Court stated the following:

> In concluding that so-called "hostile environment" (*i.e.*, non quid pro quo) harassment violates Title VII, the EEOC drew upon a substantial body of judicial decisions and EEOC precedent holding that Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

477 U.S. at —, 106 S.Ct. at 2405, 91 L.Ed.2d at 59. Although the Court cited the foregoing proposition in the context of sexual harassment, in the same discussion the Court noted that this principle applied to race and national origin discrimination as well. There is no sound reason why this court should interpret identical statutory language in the context of age discrimination any differently. *See also Schoen v. Consumers Untied Group, Inc.*, 670 F.Supp. 367 (D.D.C.1986) (WESTLAW, Allfeds file); *Mead v. United States Fideli-*

ty & Guaranty Co., 442 F.Supp. 114, 135 (D.Minn.1977) (illegal retaliatory conduct can include selective surveillance and monitoring); *Equal Employment Opportunity Comm'n v. Union Bank of America*, 12 Fair Empl. Prac. Cas. (BNA) 527 (D.Ariz. 1976) (retaliatory acts include creating animosities). Of course, the harassment must be sufficiently severe or pervasive to alter the employee's employment and create an abusive working environment, 477 U.S. at ——, 106 S.Ct. at 2406, 91 L.Ed.2d at 60, but the court believes that plaintiff's evidence was sufficient for the jury to find such harassment.

Based on the foregoing, defendant's argument concerning the sufficiency of evidence on the retaliation claim is without merit.[1]

### B. *Alter or Amend Judgment*

■ Defendant's next motion is to alter or amend the judgment to provide for defendant to recover its costs from plaintiff or, alternatively, to apportion costs in proportion to the relative success each party had on the merits. Defendant objects to being taxed for plaintiff's costs when plaintiff succeeded only on the retaliation claim and was awarded no monetary damages. In light of plaintiff's unsuccessful age discrimination claim and demand for $1.7 million in damages, defendant contends that it prevailed at trial, at least to some extent. In support of its argument, defendant cites cases standing for the proposition that the trial court has discretion to alter the award of costs when a plaintiff has been less than successful on all of his claims. Conversely, plaintiff contends that because costs in the present case are not based on Federal Rule of Civil Procedure 54(d) ("[C]osts shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ."), but rather on a specific federal statute, the

court has no discretion in awarding costs. Specifically, plaintiff relies upon the ADEA provision in 29 U.S.C. § 626(b), which incorporates the remedies contained in 29 U.S.C. § 216: "The court ... *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added).

The question is, of course, did the jury award "any judgment" to plaintiff? This question is intimately related to the issue of plaintiff's entitlement to attorney's fees, which can be awarded to plaintiff only if he was the "prevailing party" in this lawsuit. The court will therefore consider these issues together.

The critical issue in awarding attorney's fees and Costs in this action is whether a plaintiff who succeeds on one or more, but not all of his claims and is awarded nominal or no damages is the prevailing party, such that the law will permit him to recover his attorney's fees and costs from the opposing party. As Justice White recently recognized in a dissent from the Supreme Court's denial of certiorari, some circuit courts of appeals "have held that a plaintiff receiving only nominal damages is not truly prevailing and is therefore not entitled to attorney's fees. . . . This conclusion, however, has been rejected by other Circuits." *Moran v. Pima County*, 474 U.S. 989, 989, 106 S.Ct. 397, 397, 88 L.Ed.2d 349 (1985) (White, J., dissenting from denial of certiorari) (citations omitted). It is true that Justice White made these observations in the context of a lawsuit under the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983 (1982), but for the purposes of the present case, the question of awarding attorney's fees and costs shall likewise be viewed in the context of a lawsuit seeking vindication of the plaintiff's civil rights. Whether the

---

1. In its reply memorandum, defendant for the first time raised an issue concerning plaintiff's failure to recover monetary damages and the corresponding effect on the legal sufficiency of the retaliation claim. Beside being untimely, this argument is patently meritless. Defendant cites a case in which the court held, on summary judgment, that because the facts established no damage as a matter of law, defendant was

entitled to judgment even if plaintiff could prove age discrimination. *See Fariss v. Lynchburg Foundry*, 769 F.2d 958 (4th Cir.1985). That situation is inapposite because in the present case, the evidence was sufficient to permit the jury to award damages, but they declined to do so. The evidence did not support the conclusion that plaintiff suffered no damage as a matter of law.

remedy chosen by the plaintiff is afforded by section 1983; the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e *et seq.;* or the Age Discrimination in Employment Act, should make no difference for purposes of this discussion. *Compare Keller v. Prince Georges's County,* 827 F.2d 952, 955–63 (4th Cir.1987) (employment discrimination claim brought simultaneously under section 1983 and Title VII) *with Equal Employment Opportunity Comm'n v. Wyoming,* 460 U.S. 226, 229–33, 103 S.Ct. 1054, 1056–58, 75 L.Ed.2d 18 (1983) (ADEA intimately related to Title VII).

Fortunately, this court need not choose between conflicting decisions. The Tenth Circuit recently held that a plaintiff is a prevailing party even if he wins only nominal damages on his section 1983 claims. *Nephew v. City of Aurora,* 766 F.2d 1464, 1466 (10th Cir.1985), *rev'd on rehearing on other grounds,* 830 F.2d 1547 (10th Cir. 1987) (en banc). The court perceives no legally significant difference between a $1.00 nominal damage award and the award of no damages in the present case. Therefore, plaintiff must be considered the "prevailing party" for purposes of costs and attorney's fees. The court notes plaintiff's legal authority concerning the mandatory nature of an award of fees (including costs) under the ADEA, *see Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 86 (2d Cir. 1983), but in any event the court does not find it appropriate to discretionarily reduce plaintiff's recovery of the costs of his action. Defendant's motion to alter or amend the judgment shall be denied.

## III. PLAINTIFF'S MOTIONS

### A. *Alter or Amend Judgment*

Plaintiff has also filed several post-trial motions. The court will first address plaintiff's motion to alter or amend judgment by providing for full and complete equitable and legal relief. By this motion plaintiff seeks an award of liquidated damages under the ADEA based on the jury's determination that defendant willfully retaliated against plaintiff. Plaintiff also seeks the following relief: (1) promotion to Regional Sales Manager or Regional Account Man-

ager; (2) front pay and benefits in the amount of $437,107.00; (3) previously unpaid merit increases; (4) an injunction prohibiting defendant from further willful retaliation; and (5) back pay in the amount of $29,715.00 plus pre-judgment interest.

### 1. Legal and Equitable Relief

█ The Tenth Circuit has held that the district court's discretion in affording a plaintiff equitable relief under the ADEA must be exercised in light of the objectives of the statute being enforced. *Blim v. Western Elec. Co.,* 731 F.2d 1473, 1478 (10th Cir.), *cert denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984). In the present case, the jury found no age discrimination, so the general purpose of the ADEA's anti-discrimination provisions as stated in *Blim* has no relevance. The jury *did* find retaliation. The Fifth Circuit recently commented on the purpose of the ADEA's anti-retaliation provision:

Section 4(d) makes it "unlawful for an employer to discriminate against any of his employees ... because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d). This provision is derived from a similar one in title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) ..., and its purpose is to protect persons who "resort[ ] to the legal procedures that Congress has established in order to right congressionally recognized wrongs," *East v. Romine, Inc.,* 518 F.2d 332, 340 (5th Cir.1975).

*Equal Employment Opportunity Comm'n v. Cosmair, Inc.,* 821 F.2d 1085, 1088 (5th Cir.1987). The court will therefore address plaintiff's requested legal and equitable relief with this purpose in mind.

█ The court can summarily dismiss plaintiff's requested injunctive relief. When there is no proof of a pattern or practice of discrimination, an injunction barring an employer from continuing alleged discriminatory practices is not appropriate. *Kirkland v. Buffalo Bd. of Educ.,* 487 F.Supp. 760, 773 (W.D.N.Y.1979), *aff'd,*

622 F.2d 1066 (2d Cir.1980); *see also Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 897–98 (5th Cir.1978) (injunctions prohibiting such conduct as "discrimination," referred to colloquially as "obey the law" injunctions, cannot be sustained). The evidence failed to establish any threat of future discrimination by defendant. Plaintiff's request for an injunction shall be denied.

■ The court also declines to award alleged unpaid merit increases and back pay. The vast majority of the alleged discriminatory practices underlying plaintiff's request occurred prior to plaintiff's filing a charge in this case. The jury found no age discrimination and therefore necessarily concluded that defendant did not wrongfully deny any salary to plaintiff. Furthermore, an award of these damages would not further the purpose of section 623(d).

■ For these same reasons, the court must deny plaintiff's request for front pay. The jury determined that plaintiff's salary has progressed at the same rate that it would have absent retaliation, based on its award of no damages. The court agrees the evidence established that plaintiff received salary increases comparable to those of his peers within the company. Because there is no indication that plaintiff has suffered or will suffer unfair pay treatment, any award of front pay would be in derogation of the weight of the evidence. The court's denial of any monetary damage relief is consistent with present Tenth Circuit authority, in that "[t]he manifest purpose of [the] broad grant of equitable power [under the ADEA] is to enable the courts to fashion whatever remedy is required to fully compensate an employee for the economic injury sustained by him." *Equal Employment Opportunity Comm'n v. Prudential Federal Sav. and Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir.) (quoting *Koyen v. Consolidated Edison Co. of New York, Inc.*, 560 F.Supp. 1161, 1168 (S.D.N.Y.1983)), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). In the present case, plaintiff has suffered no economic injury.

■ As an alternative to back or front pay, the court finds that promotion would be the preferred remedy in an appropriate case. Promotion in a situation in which the plaintiff is still employed with defendant is comparable to reinstatement in a discharge case. The Tenth Circuit has consistently held that reinstatement is the preferred remedy over front pay. *See Prudential Federal*, 763 F.2d at 1172 (citing cases). Again, however, the court does not find that mandatory promotion is consistent with the purposes of the ADEA in light of the jury verdict. Plaintiff's evidence showed that upon promotion to Regional Account Manager or Regional Sales Manager, an employee could expect a pay increase from 6% or 8% upward to 41%. Had the jury found that plaintiff was wrongfully denied a promotion, it would have necessarily determined that some financial injury was incurred. The jury found no such injury. Although the court's power to grant equitable relief is broad, the court's discretion is limited to effectuating the purpose of the ADEA. As earlier stated in this Memorandum and Order, the purpose of the anti-retaliation provision is to protect persons who resort to legal procedures in order to right congressionally recognized wrongs. Because the evidence showed that plaintiff would not have received a promotion even absent retaliation, the granting of a mandatory promotion would go beyond protecting plaintiff and would actually constitute a penalty against defendant and an undeserved windfall for plaintiff.

The court finds that plaintiff's recovery of his costs and a reasonable attorney's fee will serve the purpose of the ADEA's anti-retaliation provision. Plaintiff will then be made whole for the expense of bringing this lawsuit. The court firmly believes that this recovery will be adequate protection for plaintiffs and a warning to potential defendants that retaliatory conduct will be costly. Not only will defendant have paid its own costs and attorney's fees in this matter, but it will also have to pick up plaintiff's expenses. In light of a jury verdict finding that plaintiff has suffered no economic injury, making him whole for

the bringing of this lawsuit seems to be an eminently fair outcome.

Based on the foregoing, plaintiff's requested equitable relief shall be denied.

### 2. Liquidated Damages

■ Plaintiff next moves for liquidated damages based on the jury's finding that defendant's conduct was willful. Neither party has presented this court direct authority concerning whether liquidated damages may be awarded when a jury has determined that the facts do not warrant recovery of actual damages. It may be appropriate here to diverge and discuss the background of the ADEA damages provisions. In relevant part, the statute reads as follows:

> Any act prohibited under section 4 of this Act [29 U.S.C. § 623] shall be deemed to be a prohibited act under section 15 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 215). Amounts owing to a person as a result of a violation of this Act shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of section 16 and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §§ 216, 217): Provided, That liquidated damages shall be payable only in cases of willful violations of the Act.

29 U.S.C. § 626(b). Congress has therefore directed the courts to follow the Fair Labor Standards Act (FLSA) in the computation of damages. The FLSA civil damages provision reads as follows:

> Any employer who violates the provisions of section 6 or section 7 of this Act [29 U.S.C. §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount as liquidated damages.

29 U.S.C. § 216(b). The "amounts owing" provision in the ADEA contemplates two FLSA elements: (1) items of pecuniary or economic loss such as wages, fringe, or other job-related benefits; and (2) liquidated damages. *See Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321 (7th Cir.1987)

(citing H.R.Rep. No. 950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Admin.News, 504, 528, 535).

■ The key difference between the ADEA and the FLSA, as noted by the Supreme Court, is that section 16(b) of the FLSA (29 U.S.C. § 216(b)), which makes an award of liquidated damages mandatory in every case involving a violation of the statute, is significantly qualified in the ADEA by the proviso that a prevailing plaintiff is entitled to double damages "only in cases of willful violations." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). This language appears to be discretionary by making liquidated damages available, though not mandatory, in cases of willful violations. *See Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1202 (7th Cir.1984) ("[U]nder the age discrimination law, it is not certain that a plaintiff who proves a willful violation will automatically get double damages...."), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). Prior to 1985, the cases were split on whether award of liquidated damages was discretionary even though the defendant's conduct was willful. *Compare Hedrick v. Hercules, Inc.*, 658 F.2d 1088, 1096 (5th Cir.1981), *Adams v. James*, 526 F.Supp. 80, 85–86 (M.D.Ala.1981), *and Hannon v. Continental Nat'l Bank*, 427 F.Supp. 215, 217–18 (D.Colo.1977) (all finding that award of liquidated damages is discretionary) *with Babb v. Sun Co.*, 562 F.Supp. 491, 493–94 (D.Minn.1983) (citing cases in support of holding that "award of liquidated damages is mandatory for willful violations of the ADEA"). The general rationale used in the former set of cases was that if the employer could prove that it acted with good faith, it should not be penalized with liquidated damages.

In 1985, the Supreme Court cleared the air as far as the good faith exception was concerned with its opinion in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), concerning the scope of the term "willful." In overruling its own prior decisions, the Fifth Circuit has stated the following concerning

the effect of *Thurston* on the good faith exception:

> [T]his rule has no vitality after the *Thurston* decision. Prior to *Thurston*, it was possible to find a willful violation, and also find that the employer had acted in "good faith." [*Hedrick*, 658 F.2d] at 1096. Because Congress did not intend to impose liquidated damage liability upon employers for good faith violations, the [*Hedrick*] rule permitted the court discretion in awarding liquidated damages. Under the *Thurston* rule, however, "good faith" can no longer coexist with "willfulness". The result is that only "knowing" or "reckless" violations of the ADEA are subject to liquidated damages. Thus, a further examination of good faith becomes irrelevant because it has already been factored into the *Thurston* "willfulness" definition.

*Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 287 (5th Cir.1986). *Thurston* removed the possibility of an employer having subjective good faith and yet being liable for liquidated damages. The Court said that "a violation is 'willful' if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" 469 U.S. at 126, 128, 105 S.Ct. at 624, 625 (adopting lower court definition of "willful"). Therefore, a jury will not be allowed to find a willful violation when a defendant merely should have known that its actions would violate the ADEA, and a good faith exception becomes unsuitable.

Subsequent to *Thurston*, it appears that most courts have generally assumed that liquidated damages are mandatory upon a finding of willfulness, without expressly so stating. For instance, in the *Powell* case cited above, the court noted that the old rule (incorporating the good faith exception) permitted the court discretion in awarding liquidated damages, while under the *Thurston* rule, only "'knowing' or 'reckless' violations of the ADEA are subject to liquidated damages." 788 F.2d at 287. The *Powell* court seemed to presume that liquidated damages are now mandatory. *See also Bruno v. Western Elec. Co.*, 829 F.2d 957, 967 (10th Cir.1987) ("[I]n

section 626(b), Congress *provided* that in cases of willful violations of the ADEA, the court *would order* liquidated damages.") (emphasis added); *but see Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir.1985) ("Unlike the ADEA's discretionary grant of liquidated damages for willful statutory violations, the FLSA provides for mandatory liquidated damages.") Some courts state that if the employer's conduct is willful, the plaintiff is "entitled" to liquidated damages. This was the language actually used by the *Thurston* Court: "[Under the ADEA] a prevailing plaintiff is entitled to double damages 'only in cases of willful violations.' 29 U.S.C. § 626(b)." 469 U.S. at 111, 105 S.Ct. at 613. *See also Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1101 (11th Cir.1987) ("[Defendant's] actions satisfy the 'willfulness' requirements of *Thurston* and entitle [plaintiff] to liquidated damages."). If "entitle" is given its usual legal significance, then the *Thurston* Court held that a finding of willfulness gives a plaintiff "a right or legal title to" liquidated damages. Black's Law Dictionary 477 (5th ed. 1979). In fact, the Tenth Circuit made this same finding in a pre-1985 decision:

> Once a violation of the ADEA is determined to be willful, the award of liquidated damages is mandatory, and the court is without discretion "to award liquidated damages in an amount other than that equal to the award for compensatory damages." *Hill v. Spiegel, Inc.*, 708 F.2d 233, 238 (6th Cir.1983); *see also* H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Ad.News 528, 535 (ADEA provides liquidated damages calculated as amount equal to pecuniary loss to compensate for nonpecuniary losses arising from willful violation).

*Equal Employment Opportunity Comm'n v. Prudential Federal Sav. & Loan Ass'n*, 741 F.2d 1225, 1234 (10th Cir. 1984), *vacated*, 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 913 (1985), *withdrawn*, 753 F.2d 851 (10th Cir.), *on remand*, 763 F.2d 1166 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). The

original *Prudential Federal* opinion, which included the passage quoted above, was issued in 1984. Subsequently, the Supreme Court decided *Thurston*, an opinion that rendered the Tenth Circuit's discussion of what constitutes "willfulness" invalid. The Supreme Court remanded for consideration in light of *Thurston*, and the Tenth Circuit withdrew the prior opinion and eventually issued a revised decision. The rationale behind the invalidation of the original opinion had nothing to do with the law stated in the quoted passage, however, and this court believes that if anything, *Thurston* reinforced the Tenth Circuit's original holding concerning the mandatory nature of liquidated damages in an ADEA case. In *Thurston*, the Court noted that while liquidated damages are mandatory under the FLSA in every case involving a violation of the Act, the ADEA narrowed the availability of liquidated damages to cases involving willful violations. Consistency would require that at least when a willful violation is found, liquidated damages are mandatory. *See also Castle v. Sangamo Weston, Inc.*, 650 F.Supp. 252, 255 n. 1 (M.D.Fla. 1986) ("This Court ... would deny liquidated damages altogether, were it not for the interpretations made by several courts which indicate liquidated damages are mandatory upon a finding of willfulness.") (citing cases). The more recent Tenth Circuit opinion in *Bruno v. Western Elec. Co.*, 829 F.2d 957, 967 (10th Cir.1987), in commenting that Congress provided for a trial court to order liquidated damages in a case involving willfulness, certainly is consistent with the law stated in the 1984 *Prudential Federal* opinion. Based on the weight of the authority cited above, the court finds that, without considering the jury's verdict in the present case, an award of liquidated damages in an ADEA case is mandatory upon a finding of willfulness.

 The court's finding begs the question of whether, despite the mandatory nature of liquidated damages in a case involving willfulness, the court has any authority to award liquidated damages absent the intended point of reference: actual or pecuniary damages. As the Seventh Circuit very recently noted, Congress provided

that liquidated damages must be calculated as an amount equal to the pecuniary loss. "Thus, the amount of actual harm done the plaintiff must be determined prior to doubling the damage award as required to establish liquidated damages." *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321 (7th Cir.1987). In the present case, the court has before it a jury determination that no actual harm has been done the plaintiff, thereby leaving the liquidated damages issue in a quandary. The court will look to the purpose of the ADEA's provision regarding liquidated damages for a resolution of this issue. *See* 29 U.S.C. § 216(b) ("In any action brought to enforce this Act the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this Act....").

The Tenth Circuit has commented on one of the purposes of liquidated damages in an ADEA case:

The ADEA authorizes the recovery of "liquidated damages (calculated as an amount equal to the pecuniary loss) which compensate the aggrieved party for nonpecuniary losses ... that are 'too obscure and difficult of proof for estimate other than by liquidated damages....'" H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 528, 535 [hereinafter "Conference Report"] (quoting *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682 (1942)).

*Prudential Federal*, 763 F.2d at 1174 n. 4. The language quoted in the congressional history seems to indicate that the ADEA's liquidated damage provision's purpose is solely compensatory, with no punitive intent. In discussing the ADEA and its relationship to the FLSA, the Conference Report notes that "an award of liquidated damages under the FLSA is not a penalty but rather is available in order to provide full compensatory relief." *Conference Report, supra* at 535. Prior to *Thurston*, courts that interpreted this congressional history found that the FLSA cases were

applicable to the ADEA and that the liquidated damage provision in the ADEA was not punitive in nature. *See Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1202 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Blim v. Western Elec. Co.*, 731 F.2d 1473, 1479 (10th Cir.1984); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1102–03 (8th Cir.1982). The *Thurston* Court threw a wrench into legislative history by holding that "[t]he legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." 469 U.S. at 125, 105 S.Ct. at 624. Although some courts have subsequently disagreed with this interpretation of legislative history, it has nonetheless been uniformly held that the liquidated damage provision should be viewed as punitive in nature. *See Coston,* 831 F.2d at 1329 ("If we were considering the question of whether the standard for liquidated damages is punitive on a clean slate we would of course consider the entire legislative history behind the ... provision ourselves. Nevertheless, it is equally apparent that the Supreme Court has confronted that question and spoken authoritatively."); *Bruno v. Western Elec. Co.*, 829 F.2d 957, 967 (10th Cir.1987) ("These liquidated damages serve to punish those who engage in willful violations—the purpose that would be served by providing punitive damages."). However, the Supreme Court did not expressly disagree with the legislative history concerning the compensatory role that liquidated damages serve. The post-*Thurston* decisions have continued to discuss both aspects of liquidated damages. *See Coston,* 831 F.2d at 1328; *Prudential Federal,* 763 F.2d at 1174 n. 4. *But see Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 281–82 (2d Cir.1987) (after *Thurston* liquidated damages no longer serve compensatory function.) In an abundance of caution, the court finds that both the punitive and compensatory nature of liquidated damages should be considered in determining whether any amount of such damages can or should be awarded in the present case.[2]

Insofar as effectuating the purpose(s) of the ADEA, some amount of liquidated damages would probably be appropriate in this case. The jury did determine that defendant's retaliation against plaintiff was willful. Absent liquidated damages, the only penalty that the defendant receives for its wrongful conduct is the stigma of the verdict and the payment of attorney's fees and costs. As the court earlier noted, plaintiff's receipt of these serves as a vindication for the company's retaliation for plaintiff's having filed a charge of age discrimination, since no actual damages were awarded. To now say that attorney's fees and costs also serve as a penalty for willful

---

2. Several cases have expressed a third purpose behind ADEA's liquidated damage provision. In *O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1552 (11th Cir.1984), the court first noted that the remedial section of the ADEA incorporates the liquidated damages provision of the FLSA, 29 U.S.C. § 216(b). The court then found that recovery of liquidated damages under section 216(b) "represents compensation for delay in payment of amounts owing under the FLSA. Amounts owing under the ADEA are deemed to be amounts owing under the FLSA. 29 U.S.C. § 626(b). Thus, liquidated damages compensate a successful ADEA plaintiff for delay in payment." 748 F.2d at 1552. Theoretically, if a jury finds no "amounts owing" (*i.e.,* fails to award pecuniary damages), then an award of liquidated damages would be unjustifiable even if the jury found a willful violation. The court in *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 382–83 (3d Cir.1987) agreed that one purpose of a liquidated damage award is to compensate the plaintiff for a delay in receiving back pay and benefits, but also relied on the Supreme Court's decision in *Thurston* (concerning the punitive nature of liquidated damages) in analyzing the availability of liquidated damages.

Although the ADEA relies heavily upon the provisions of the FLSA, it does so mainly in providing the procedural method of calculating damages, at least as far as the present case is concerned. The purpose of the ADEA and the evil against which it legislates (age discrimination), along with the class of persons it protects, are far different than the wage protection provided by the FLSA. One prevents economic exploitation of employees, while the other prohibits violation of a civil right. Therefore, although the ADEA borrows the FLSA's method of levying liquidated damages, the ADEA's liquidated damage provision serves an independent purpose and should be judged in light of its own legislative and jurisprudential history. For this reason the court declines to rely upon the authority in *O'Donnell,* although it supports the ultimate conclusion of this court.

conduct would constitute a facade in the highest degree. Moreover, the evidence demonstrated that if the plaintiff incurred any injury at all, it consisted of personal humiliation precipitated by the derogatory comments of defendant's agents. Thus, the purpose of liquidated damages as a means to compensate the plaintiff "for non-pecuniary losses" that are otherwise "too obscure and difficult of proof for estimate other than by liquidated damages" will be effectuated by an award of such damages in the present case. Yet despite the mandatory nature of liquidated damages in an ADEA case and the congressional command to effectuate the purpose of the Act, the court must deny an award of liquidated damages under these facts.

Liquidated damages are purely a creature of statute. *Chambers v. Weinberger,* 591 F.Supp. 1554, 1557 (N.D.Ga.1984) (citing *Dennick v. Railroad Co.,* 103 U.S. (13 Otto) 11, 17, 26 L.Ed. 439 (1880)); *Wilkes v. United States Postal Serv.,* 548 F.Supp. 642, 642 (N.D.Ill.1982). Congressional history on this issue is established:

> Rather than leaving the method of determining the amount of punitive damages to be fought out in the courts Congress chose to tie the amount of liquidated damages to the amount of harm done in each particular situation. Thus the deterrent power of the penalty is roughly matched to the pecuniary harm incurred.... Such a scheme makes use of the FLSA's liquidated damages provision, which is already in place and working, and allows for more predictable and consistent results in litigation brought for violations of the ADEA.

*Coston,* 831 F.2d at 1329. There simply exists no statutory authority for this court to reach out and create some magical liquidated damage figure that will sufficiently compensate plaintiff and deter defendant. Furthermore, the court is uniquely unqualified to sit in judgment in levying a penalty against a civil litigant, especially when Congress provided a *specific* formula to determine the amount of liquidated damages

based on the express rationale that such amount is otherwise "too obscure and difficult of proof."

Additionally, this court does not believe that it would further the purpose of the ADEA to permit a plaintiff to come into court and receive a large judgment when he has suffered no measurable injury. If this were allowed, then liquidated damages would be transformed into the equivalent of a purely punitive form of relief. The court finds the following discussion relevant in this regard:

> [P]recluding punitive damages facilitates the reconciliation process provided for under the ADEA. The broad purpose of the ADEA is to insure that older individuals who desire work will not be denied employment.... In addition, prior to any court action on an ADEA claim, the plaintiff and his employer must go through a reconciliation process carried out by the EEOC. Through this process the agency can obtain efficient solutions to problems of age discrimination without resort to litigation. In agency proceedings, punitive damages are not available; thus, an ADEA plaintiff who may be able to recover punitive damages in a court action would be less inclined to seek reconciliation at the agency level. In fact, he might avoid contractual claims and seek to thwart reconciliation in order to reach the courts.... If punitive damages are not available, plaintiffs will more likely seek contractual rights and more willingly participate in agency reconciliation efforts.

*Bruno v. Western Elec. Co.,* 829 F.2d 957, 967 (10th Cir.1987). Permitting recovery of liquidated damages without the established base of actual damage would frustrate the reconciliation process and introduce too much uncertainty in preparing for and litigating an ADEA lawsuit. The court recognizes that the present situation is probably isolated and that a "Pandora's box" dilemma is inapposite to these facts, but such does not free the court to step outside its jurisdictional authority.[3]

---

**3.** The court must recognize a recent opinion in the Seventh Circuit. In *Mechmet v. Four Sea-*

*sons Hotels, Ltd,* 825 F.2d 1173, 1179 (7th Cir. 1987), the court stated, without supporting au-

For the foregoing reasons, the court will decline plaintiff's invitation to penalize defendant with an award of damages that has no basis in law or fact. Plaintiff's request for liquidated damages shall be denied. *Accord Blum v. Witco Chemical Corp.*, 829 F.2d 367, 382–83 & nn.17, 18 (3d Cir. 1987) (court declines to allow liquidated damages when jury failed to award lost back pay); *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 967 (4th Cir.1985) ("Where there has been no overall pecuniary loss, we do not believe that Congress intended plaintiffs to receive a windfall liquidated damages award."); *Cowen v. Standard Brands, Inc.*, 572 F.Supp. 1576, 1580–82 (N.D.Ala.1983) (denying liquidated damages absent an award of back pay.)

### B. *Attorney's Fees and Costs*

■ The final issue is plaintiff's motion for attorney's fees and costs. The court has previously discussed and established plaintiff's entitlement to fees and costs. Plaintiff seeks to recover $74,141.25 in attorney's fees. As noted earlier, "[u]nder the ADEA, a prevailing plaintiff is entitled to recover reasonable attorney's fees." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 282 (2d Cir.1987) (citing *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 85 (2d Cir.1983)). "[A]ge discrimination cases commonly cite section 1988 [42 U.S.C. § 1988] cases on fee questions," based on the similarity between the Civil Rights Acts and the ADEA. *Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1203 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). The court has the benefit of two recent opinions discussing attorney's fees when plaintiff has received less-than-optimal results. In *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), the Court made the following relevant observation:

> Because damage awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend

for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the rights involved may be nonpecuniary in nature.*" ... "[C]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, *'for all time reasonably expended on a matter.'*" ... Thus, Congress recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages.

477 U.S. at ——, 106 S.Ct. at 2695 (emphasis in original) (citations omitted). More recently, in *Nephew v. City of Aurora*, 830 F.2d 1547 (10th Cir.1987) (en banc), the court, in reconsidering a prior opinion in light of *Rivera*, approved the district court's award of attorney's fees based on the relative greater importance of plaintiff's having obtained a verdict for violation of civil rights against a police department than the fact that plaintiff received only a nominal damage award. The court noted that discretion to award fees lies ultimately with the trial court, 830 F.2d at 1550, and approved the following method of analysis (derived from *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983)): First, using the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) (as incorporated in the legislative history of 42 U.S.C. § 1988), determine the reasonable number of hours spent in litigating the case. Second, multiply the reasonable number of hours times a reasonable billing rate, which results in the "lodestar" amount. Last, determine whether the lodestar amount should be adjusted upward or downward, a determina-

---

thority, that the FLSA "provides for liquidated damages even if a plaintiff suffers no actual damages." The court has no clue as to the source of this statement. In light of the authori-

ty discussed in this Memorandum and Order, the court does not find that any weight should be given this proclamation.

tion in which the court can reincorporate some of the factors listed in *Johnson*, including the level of the prevailing party's success.

The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill necessary to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

■ The court has reviewed plaintiff's time sheets and has studied the entries in light of the factors enumerated above, and the court generally approves plaintiff's request with a few exceptions. The factors supporting a general approval of plaintiff's requested lodestar amount include the time and labor required, because this was a very involved case factually; the customary fee, as plaintiff's attorneys have practiced often before this court and the court is very familiar with attorney's fees awards previously granted the law firm; the experience, reputation, and ability of the attorneys; and the undesirability of the case, as plaintiff had very little direct evidence of age discrimination and litigating the case involved a considerable amount of risk. Negative factors include the amount involved and the results obtained, as well as the relatively larger awards that plaintiff's counsel has obtained in similar cases. The positive factors, however, more than outweigh the others. Furthermore, as the court earlier discussed, the purpose of the ADEA in preventing retaliation against an employee's asserting his legal rights is effectuated through an award of attorney's fees and costs, and because plaintiff has not been able to establish an entitlement to other elements of recovery, the court believes that unduly curtailing the award of attorney's fees would be unjust.

The exceptions to plaintiff's requested lodestar amount are as follows:

(a) Alteration of 149.50 hours from attorney billing rate to law clerk rate. Beginning on the first day of trial in this case, August 10, 1987, plaintiff's counsel billed for three full-time attorneys. The court does not believe that three attorneys were required for the efficient prosecution of plaintiff's case, but the facts were complex enough and the witnesses numerous enough that a law clerk was reasonably necessary. Because Elizabeth Phelps has had more experience as an attorney, the court will reduce Timothy Phelps' rate (beginning with the first day of trial and ending with the last day of trial) to $25.00 per hour (the law clerk rate requested by plaintiff), although this is certainly not intended to reflect on his capability as a trial lawyer. The court has calculated the relevant time spent during this period to be 107.75 hours, for a reduction in fees from $9697.50 to $2693.75, a $7003.75 reduction.

(b) For the same reason, the court will reduce 30 hours of Rebecca Phelps' time from $90 per hour to $25 per hour, from $2700 to $750, a $1950 reduction.

(c) Betty Roper's 11.75 trial hours will be reduced to $25 per hour, for a diminution of $763.75.

(d) The court will permit only one attorney's time in waiting for the verdict, a 10 hour ($900) reduction.

The total amount of reduction in the lodestar figure shall be $10,617.50, leaving a lodestar amount of $63,523.75. As an aside, the court advises plaintiff's counsel that in future cases, billing entries such as "trial preparation," "helping prepare for trial," and "etc." will not be looked upon with favor. Because the complexity of this case adequately supports plaintiff's counsel's hours, such entries will not affect the award of fees in this case. Had plaintiff's position been weaker concerning the time necessary for preparation of his case, however, these entries might have been refused by the court for lack of specificity.

When a plaintiff comes to this court and requests a sum of money to be taken from an opposing party, the court expects sufficient justification in the form of detailed billing records.

Finally, the court believes that the lodestar should be reduced. The Tenth Circuit in *Nephew* approved of the district court's reduction of attorney's fees based on the limited success of the plaintiffs. Moreover, unlike the *Nephew* case in which at least some of the plaintiffs succeeded on the principal claim of a violation of constitutional rights, plaintiff in the present case failed to convince the jury that defendant had discriminated against him on the basis of age. The plaintiff did succeed on his retaliation claim, and the court finds this success significant enough to warrant only a small downward reduction. Because of this success and the *Rivera* and *Nephew* decisions concerning the weight to be placed upon a plaintiff's achieving only limited monetary success, the court will limit the reduction to 10%, or $6253.40. The court shall therefore enter an award of attorney's fees in plaintiff's favor in the amount of $57,171.35.

Plaintiff has also requested certain costs, but these are more properly brought before the Clerk of the District Court. If plaintiff is unhappy with the Clerk's taxing of costs, the matter can be brought to the court upon timely petition for review.

Finally, plaintiff has moved to alter or amend the judgment and for judgment notwithstanding the verdict to correct the jury's verdict on damages and to enter judgment on plaintiff's behalf on his age discrimination claim. The court believes that the jury's verdict was supported by the evidence, and plaintiff has failed to establish the requirements for altering the verdict in any way.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for judgment notwithstanding the verdict be denied; IT IS FURTHER ORDERED that defendant's motion to alter or amend the judgment be denied; IT IS FURTHER ORDERED that plaintiff's motion to alter or amend judgment to provide for legal and equitable relief be denied *in toto;* IT IS FURTHER ORDERED that plaintiff's motion for new trial on the issue of damages be denied; IT IS FURTHER ORDERED that plaintiff's motion for judgment notwithstanding the verdict be denied; IT IS FURTHER ORDERED that plaintiff's motion for attorney's fees be granted in the amount of $57,171.35.